## DOWER LUMBER COMPANY v. JOHN RODEWALD AND OTHERS[1]

December 14, 1923.

No. 23,355.

**Mechanic's lien against interest of vendor of land.**
1. The right of a materialman to charge the interest of the vendor in an executory contract for the sale of land with a mechanic's lien is not limited to the value of that portion of the materials which were furnished to the vendee to erect a building on the land after the vendor learned that it was being erected.

**Effect of vendor's failure to give statutory notice.**
2. The failure of the vendor to give notice as required by section 7024, G. S. 1913, entitled the materialman to a lien for the reasonable value of all materials he furnished for the improvement.

**Bill of sale of buildings does not free them from lien.**
3. A bill of sale of buildings which have become part of the realty, does not transfer the buildings free from mechanics' liens against the entire property.

**When right of chattel mortgagee is superior to that of lien claimant.**
4. The rights of the holder of a chattel mortgage on an engine and boiler, given to secure the purchase price thereof, are superior to those of lien claimants who were charged with notice of the mortgage by the filing thereof before the mortgaged property was annexed to the realty.

[1]Reported in 196 N. W. 473.

**Place where mortgage should be filed.**

5. Under chapter 158, Laws 1917, a chattel mortgage should be filed in the county in which the mortgaged property is given a fixed situs.

Action in the district court for Hubbard county to enforce a mechanic's lien. The case was tried before Wright, J., who made findings and ordered judgment in favor of the lien claimants. From an order denying its motion for a new trial, plaintiff appealed. Reversed.

*Mark & White* and *Daniel Delury*, for appellant.
*Marshall A. Spooner*, for respondent.

Lees, C.

The First State Bank of Laporte, the vendee in a contract for a deed of certain lands in Hubbard county, sold the land to John Rodewald for a consideration payable in instalments. In March, 1920, Rodewald began to build a lath mill on the land with lumber furnished from time to time by the Dower Lumber Company. He failed to pay for the lumber, and on July 31 the company duly filed a statement of its claim for a lien. On June 21, 1920, Rodewald executed a bill of sale transferring the mill and the machinery therein to Ralph Mackaman and William Rawlston. The bill of sale was duly recorded. On April 6, 1920, Max Horne sold an engine and boiler to Rodewald, taking from him a chattel mortgage thereon to secure the note given for the purchase price. The mortgage was filed with the register of deeds of Hubbard county on April 13, 1920. The engine and boiler were subsequently placed in the mill in the manner hereinafter stated. Laborers employed by Rodewald were not paid and they filed claims for liens against the mill property.

This action was brought by the lumber company to enforce its lien. Separate answers were interposed by the bank and by Mackaman and Rawlston. We infer from the record that the other lien claimants also answered. While the litigation was pending, Horne was made a party and appeared and asserted a claim to the engine and boiler by virtue of his chattel mortgage, and the court sustained the claim. The court found that the bank did not have knowledge

of the fact that the mill was being erected on the land in question until April 24, 1920; that at no time did the bank serve or post the notice for which provision is made in section 7024, G. S. 1913; that between March 23, 1920, and May 17, 1920, the lumber company furnished materials to Rodewald, which were used in the erection of the mill and were of the reasonable value of $3,052.59, and that the value of the materials furnished after April 24, 1920, was $525.86.

The conclusions of law were that Horne was entitled to judgment against Rodewald for the unpaid portion of his note, the judgment to be a first lien on the engine and boiler to be satisfied by the sale thereof; that the remainder of the proceeds of such sale, if any, should be applied to the payment of the lien claimants' judgments against Rodewald; that the lumber company should have judgment against Rodewald for $3,052.59, the judgment to be a lien upon his interest in the mill property, but subject to Horne's prior lien on the engine and boiler; that the judgment, to the amount of $525.86, should also be a lien upon the bank's equitable interest in the property; that the liens of all the claimants should be enforced by the sale of Rodewald's interest in the property and the application of the proceeds of such sale to the satisfaction of their judgments against him; and that all such sales be made subject to the right of redemption allowed by law.

The lumber company's motion for amended findings was denied, as was its motion for a new trial, and it appealed.

1. It is urged that the court erred in holding that the lumber company's lien on the bank's interest in the property was limited to the value of materials furnished after the bank had notice that Rodewald was building on the land described in its contract with him. Under section 7024, G. S. 1913, the bank is deemed to have authorized the improvement insofar as to subject its interest to the lien unless, within five days after it had knowledge that the company was furnishing materials for the improvement, it served or kept posted a written notice that the improvement was not being made at its instance. It is conceded that no such notice was given. This court has held that the statute was intended to establish a rule of evidence and that a vendor who fails to serve or post the

notice is presumed to have authorized the improvement. In Berg-lund & Peterson v. Abram, 148 Minn. 412, 182 N. W. 624, referring to the earlier cases, the rule is thus stated:

"That the legislature may impose such a duty (the duty to give notice) on the owners of the property for the protection of those who furnish labor or material for its improvement, and may make the failure of an owner to give or post the prescribed notice equivalent to an express acknowledgment that the improvement is being made at his instance, is no longer an open question."

The bank's failure to give the notice had the same legal effect as an express acknowledgment that the improvement was being made at its instance. The fact that the improvement had been partially completed before the bank became aware of it does not affect the application of the rule. The statute declares that the vendor shall be deemed to have authorized the improvement, not that he shall be deemed to have authorized so much of it as is made after he knows that it is being made. But counsel for the bank contends that it is beyond the power of the legislature to subject a vendor's interest to a lien, unless he consented to the making of the improvement by his vendee. Undoubtedly the vendor's consent, either expressed or implied, is the basis for the lien. When the vendor learns that the vendee is erecting a building on the land, he must give the statutory notice, and his failure to give it is evidence that the vendee is making the improvement with his consent. If he gave his consent before the vendee began to build, his interest in the land would be chargeable with a lien for the value of all the materials furnished for the improvement, although he had no subsequent notice that the building was being erected, and the legal effect of knowledge that the building is being erected, coupled with a failure to give the prescribed notice, is the same as though evidence had been produced showing affirmatively that the vendor consented to the making of the improvement before it was begun.

It is suggested that no duty to give the notice rests upon the vendor if he has no knowledge of the improvement until after it is completed. We express no opinion on that point for this is not a case of that sort.

It is also suggested that, where there are no contractual relations between the vendor and the materialman, the right to a lien necessarily rests on the doctrine of estoppel, but, as we understand the law, estoppel is not the basis upon which the right to the lien is founded. The theory upon which the vendor's interest in the land is charged is that he authorized the improvement. The statute raises a presumption that the vendee is making the improvement with his vendor's consent, if the latter fails to give the prescribed notice.

For reasons above set forth, we hold that the lumber company was entitled to charge the bank's interest in the land with a lien for the full amount of its claim against Rodewald.

2. The court found that the lath mill and other buildings erected by Rodewald constituted one plant and were part of the real estate. The conclusion follows that the lumber company's lien extended to the property as a whole and that the bill of sale to Mackaman and Rawlston did not transfer the buildings free from the lien.

3. The engine was bolted to a concrete foundation; the boiler was set on a foundation and was bricked in. The lumber company asserts that its lien is superior to Horne's rights under his chattel mortgage. Evidently the court concluded that the engine and boiler did not become part of the realty as between Horne and Rodewald. We sustain the conclusion upon the authority of Warner v. Kenning, 25 Minn. 173, and Hanson v. Vose, 144 Minn. 264, 267, 175 N. W. 113, 7 A. L. R. 1573. It does not appear that the mortgaged property cannot be removed without doing any considerable injury to it or to the building.

4. The engine and boiler were in Sibley county when sold to Rodewald. The chattel mortgage recites that Rodewald is a resident of Hubbard county and that the mortgaged property is in the town of Laporte in that county and in his possession. The statute provides for a filing in the county in which the property is situated. Chapter 158, p. 236, Laws 1917. Following Sheldon v. Brown, 72 Minn. 496, 75 N. W. 709, we construe this to mean the county in which the property is given a fixed situs. It was shown that Horne was to ship the engine and boiler to Laporte as soon as they could

be loaded. They were to have fixed situs in Hubbard county, and hence the mortgage was properly filed in that county. The filing operated as notice to all persons that Horne retained the legal title as security for the purchase price. Therefore the court correctly held that his rights were superior to those of the lien claimants.

Other assignments of error require no discussion. The findings are supported by the evidence and justify the conclusions of law except in the one particular heretofore mentioned. The order denying a new trial is reversed and the cause remanded with directions to amend the conclusions of law so as to charge the interest of the bank in the property in question with a lien in favor of the lumber company for $3,052.59, to be enforced by a sale of the property.