CUSTOM DESIGN STUDIO, A DIVISION OF L.B. BARON PROPERTIES, INC., Respondent,

v.

CHLOE, INC., Respondent,

John G. Newman, Appellant,

K & S Holdings, LLC, et al., Respondents.

No. C4-98-229.

Court of Appeals of Minnesota.

Sept. 29, 1998.

Review Denied Nov. 24, 1998.

John M. Koneck, Mark W. Vyvyan, Fredrickson & Byron, P.A., Minneapolis, for respondent Custom Design Studio.

Michael R. Gray, Mackall, Crounse & Moore, PLC, Minneapolis, for respondent Chloe.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A.,Minneapolis; and Joel E. Abrahamson, Doherty, Rumble & Butler, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., KLAPHAKE and SHUMAKER, JJ.

## OPINION

CRIPPEN, Judge.

To address the issues on this appeal, we must examine the closely competing interests of a contract-for-deed vendor and the mechanic's lien claimant with whom the vendor has had only slight contact. In this case, we reverse the trial court judgment that the contractor is entitled to a lien, correcting the court's conclusion that the claimant had too little knowledge about the vendor's interest in the property to trigger the statutory requirement for prelien notice. We also reverse the trial court's conclusion that the facts of the case show unjust enrichment of the vendor.

## FACTS

Improvements to real property at 2415 Emerson in Minneapolis gave rise to this action. Appellant John Newman held a vendor's interest in the property after contracting to convey the property to 2415 Emerson Ltd., owned by David Meunier. Respondent Custom Design Studio is in the interior decorating and design business. Custom Design's officers and shareholders are William and Lori Baron. The Barons, along with Phillip Weber and David Fhima, were also stockholders and officers of respondent Chloe, Inc., which was formally incorporated on November 1, 1994, for the purpose of purchasing a building in which to start a restaurant.

In the summer of 1994, Fhima met Meunier, who indicated that he was interested in selling the Emerson property. Meunier informed Fhima that his vendee's interest was assumable and that he had an interest-free obligation on the contract for deed. During a meeting to discuss the concept of opening a restaurant, Fhima relayed this information to the Barons and Weber. Finding the terms of the contract for deed attractive, the group agreed that the Emerson property should be acquired for their restaurant project.

Around September 1994, Custom Design orally agreed with Fhima and Weber, as

representatives of Chloe, to do the remodeling work on the Emerson property. Custom Design began work on October 17. On October 31, Weber, on behalf of Chloe, signed a purchase agreement for the property, and on November 29, 2415 Emerson Ltd. assigned its vendee's interest to Chloe, Inc. for $224,000. In December, appellant first learned of the assignment to Chloe, Inc., and during the last week of January 1995, just before the restaurant opened, appellant met Fhima at the property and observed the nearly completed remodeling work. (Final minor improvements were completed on February 6, 1995).

In April 1995, after Chloe, Inc. defaulted on the contract for deed payments, appellant commenced cancellation of the contract for deed. Nine days later, Custom Design served a mechanic's lien on appellant and Chloe, Inc. Shortly thereafter the Barons met with appellant for the first time. Although appellant voiced his approval of the improvements, he indicated that he would not pay off the lien. In June, the property was returned to appellant, who then sold it for $200,000.

Alleging failure to pay over $48,000 in materials and labor, Custom Design brought this action asserting a mechanic's lien against the property and unjust enrichment.[1] Denying appellant's motion for summary judgment and for a directed verdict, the trial court found that appellant, having been shown plans and having occasion to walk through the building as it was being remodeled, had knowledge of and consented to the improvements to the property from about the time of the commencement of the improvements. The court also found that Custom Design did not know of appellant's existence prior to November 29, 1994. The trial court concluded that Custom Design was entitled to recover from appellant $46,159.92 for unjust enrichment and that Custom Design was entitled to enforce a mechanic's lien on the property.[2]

Appellant challenges the trial court's judgment, as amended to include an award of attorney fees, and the denial of his motion for a new trial.

## ISSUES

1. Did the trial court err in determining that appellant was not entitled to prelien notice?

2. Did the trial court err in determining that appellant was unjustly enriched?

## ANALYSIS

When reviewing a bench trial, we are limited to determining whether the trial court's findings are "clearly erroneous, either without substantial evidentiary support or induced by an erroneous view of the law." *Reserve Mining Co. v. State*, 310 N.W.2d 487, 490 (Minn.1981). On appeal from the denial of a motion for a new trial, our review is limited to determining whether the verdict is "manifestly and palpably contrary to the evidence, viewed in a light most favorable to the verdict." *ZumBerge v. Northern States Power Co.*, 481 N.W.2d 103, 110 (Minn.App. 1992), *review denied* (Minn. April 29, 1992). We review de novo the trial court's construction of the mechanic's lien statute. *David–Thomas Cos. v. Voss*, 517 N.W.2d 341, 342 (Minn.App.1994).

### Prelien Notice

■ Appellant contends that the trial court erred in concluding that because Custom Design was not aware of appellant's specific identity during the relevant period it was excused from giving him prelien notice. Minn.Stat. § 514.011, subd. 1 (1996) (contractors are required to notify property owners within ten days after orally contracting to perform improvement work on their property); *Merle's Constr. Co. v. Berg*, 442 N.W.2d 300, 302 (Minn.1989) (failure to give notice defeats lien). Undisputed evidence indicates that Custom Design knew when it agreed to improve the property that a contract vendor held title to the property.

---

1. Custom Design also brought an action against Chloe, Inc. for breach of contract and unjust enrichment.

2. As to Chloe, Inc., Custom Design was awarded $31,159.92 based on breach of contract and unjust enrichment.

The trial court relied on Lori and William Baron's testimony that they did not know appellant's identity within the ten-day window and apparently agreed that they had no affirmative obligation to seek his name.[3] That reasoning is counterintuitive to the goal of protecting property owners, and we are not persuaded that *Mill City Heating & Air Conditioning Co. v. Nelson,* 351 N.W.2d 362 (Minn.1984), upon which Custom Design relies, supports their position.

Under the prelien notice statute, notice must be given to the owner of an interest "whose interest in the property * * * is known" to the lien claimant. Minn.Stat. § 514.011, subd. 5 (1996). In *Mill City* the supreme court reasoned that when a lien claimant "knows that a person has a[n] * * * interest in registered land * * * it would be unfair and unreasonable for the law to allow the [lien claimant] to wear blinders and look only to the certificate of title." *Id.* at 365. Thus, having determined when prelien notice was required, the court concluded that there was not sufficient evidence that the lien claimants had knowledge of the property owners' interest and remanded for further findings. *Id.*(only evidence that the lien claimants knew of the property owners' interest was a sign on the premises indicating who the home was being built for and "some indication" that the property owners had spoken with one of the claimant's representatives).

Respondent reads into *Mill City* the declaration that inquiry may be needed on the unknown interest of a known person but not on the identity of an unknown person with a known interest. Although *Mill City*may illustrate the former and not the latter, we find in the opinion no indication that it limits the duty of inquiry to cases where actual knowledge of the owner's identity is proven. Custom Design was sufficiently aware of a vendor's interest in the property and, for whatever reason, put on "blinders" rather than taking the simple step of inquiring as to appellant's identity. These facts persuade us that the trial court erred in finding that

Custom Design had too little knowledge about appellant's interest to entitle him to prelien notice.

## Unjust Enrichment

An unjust enrichment claim does not lie merely because one party benefits from another's efforts or obligations; rather "it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981) (citation omitted). A review of the record shows that Custom Design has not provided evidence of any fraudulent or illegal acts by appellant sufficient to sustain an action for unjust enrichment. *See, e.g., Anderson v. DeLisle,* 352 N.W.2d 794, 796 (Minn.App.1984) (vendor who contracted to retain improvements, after knowing that they had begun and that the vendees had financial problems, was unjustly enriched), *review denied* (Minn. Nov. 8, 1984).

The trial court's unjust enrichment determination apparently flows from its finding that appellant consented to the remodeling "on or about the time of commencement of the improvements." But appellant's consent, if it occurred, is not evidence of an affirmative action to inappropriately lure Custom Design into remodeling the property. *See Brakke v. Hilgers,* 374 N.W.2d 553, 556 (Minn.App.1985) (absent plot for "unfair advantage," no claim for unjust enrichment).

Having concluded that the unjust enrichment award was thus flawed, we decline to review appellant's further assertions that the award was not adequately supported by evidence that he benefited from his resale of the property.

## 3. Other Issues

Appellant also urges that the lien fails under Minn.Stat. § 514.01 (1996) (providing that those "under contract with the owner of such real estate or at the instance of [the owner's] agent * * * shall have a lien upon the improvement"). But under Minn.Stat. § 514.06 (1996), vendors with knowledge that

---

**3.** The court found that Custom Design "did not know of the existence of Newman at any time before November 29, 1994." This date marks the occasion when the contract was assigned and the specific identity of appellant Newman was made evident to Custom Design.

improvements are being made on their property can prevent attachment of a lien by serving notice of their objection within five days after learning of the improvements.

No section 514.06 notice was served in this case, but appellant contends he was not required to give this notice. He asserts that the trial court erred in finding that he (a) knew "improvements were going to be made upon his Property"; (b) "was informed by Chloe, Inc. through its officers and directors from on or about the time of commencement of the improvements"; and (c) "was shown plans and had occasion to walk through the building as it was being remodeled." The record does not support these findings.[4] But Lori Baron's testimony would permit a finding that appellant was on the premises "while the work was going on." *Dower Lumber Co. v. Rodewald*, 157 Minn. 314, 317, 196 N.W. 473, 474 (1923) (holding that owner's failure to object to improvements even after they had been partially completed had same effect as authorization of improvement). Because respondent's lien claim fails due to the absence of the required prelien notice, there is no practical reason to consider remanding the proceedings for corrected findings that would be needed to fully explore whether the lien claim also fails under section 514.01 and 514.06.

### DECISION

Because Custom Design had sufficient knowledge of appellant's ownership interest to entitle appellant to prelien notice and because appellant did not unjustly benefit from the improvements made to his property, we reverse the trial court's judgment and decline to reach appellant's alternate ground for relief.

**Reversed.**

---

**4.** The trial court evidently relied on an affidavit that was filed in pre-trial proceedings although the witness did not testify at the trial.