*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0321**

Robert Davis Construction, Inc.,
Respondent,

vs.

Morgan C. Althoen, et al.,
Appellants.

**Filed September 22, 2014
Affirmed in part and reversed in part
Hudson, Judge**

Koochiching County District Court
File No. 36-CV-10-680

Kimberly A. Wimmer, Wimmer Law Office, P.A., Littlefork, Minnesota (for respondent)

John M. Colosimo, Colosimo, Patchin, Kearney & Brunfelt, Ltd., Virginia, Minnesota (for appellants)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

## U N P U B L I S H E D   O P I N I O N

**HUDSON**, Judge

Appellants Morgan and Wendy Althoen challenge a district court determination that, although they had a valid basis to terminate their construction contract with respondent Robert Davis Construction, Inc., they have an obligation to pay respondent for the work it performed and the expenses it incurred before the contract was terminated,

under a theory of unjust enrichment. Appellants argue that there was insufficient evidence to support the district court's award. They also challenge the district court's award of attorney fees and interest to respondent, a requirement that they place money in a trust account, and the denial of their counterclaim that respondent violated the covenant of good faith and fair dealing. We affirm in part and reverse in part.

## FACTS

In about April 2010, appellants contacted respondent, a general contractor, after incurring substantial water damage to their property. The parties agreed that respondent would perform work on the property in accordance with an insurance estimate, along with some extra work that would be compensated at an hourly rate. They memorialized their agreement in a written contract. The contract included a provision allowing respondent to recover costs of collection, including attorney fees and interest. Respondent worked on appellants' home until May 27, 2010, when, unsatisfied with respondent's performance, appellants excluded respondent from the property. In total, appellants had paid respondent $10,887.93 for its work through May 27.

In August 2010, respondent filed a complaint seeking the full amount of the contract under a theory of breach of contract, and, in the alternative, seeking the value of work performed and expenses incurred under a theory of unjust enrichment. It also requested interest on the unpaid balance and attorney fees. Appellants counterclaimed for an amount they allege respondent was overpaid and for breach of the covenant of good faith and fair dealing.

2

A court trial was held on August 29, 2013, and the district court issued its findings of fact, conclusions of law, and judgment in December 2013. The district court found that the parties had a valid contract but concluded that appellants had a basis to terminate the contract, "relieving them from obligations to pay for work unperformed and relieving [respondent] from performing additional work after the termination." The court concluded that appellants owe respondent $13,363.85 for the uncompensated work it performed and the expenses it incurred before the contract was terminated, based on unjust enrichment, and an additional $5,345.54 for interest on the unpaid balance and $9,549.75 for reasonable attorney fees. This appeal follows.

## D E C I S I O N

**I.** **The district court did not err by awarding respondent $13,363.85 for the work it performed and the expenses it incurred before the contract was terminated.**

Appellants argue that the district court erred by awarding respondent $13,363.85, under a theory of unjust enrichment, for the work it performed and the expenses it incurred before they terminated the contract. Unjust enrichment is an equitable claim "that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). A party is unjustly enriched in the sense that unjustly means illegally or unlawfully, or that retention of the benefit is morally wrong. *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001). The claim is not available when there is an enforceable contract. *Caldas*, 820 N.W.2d at 838. Three requirements must be met to prevail on a theory of unjust enrichment: "(1) a benefit

3

[was] conferred by the plaintiff on the defendant; (2) the defendant accept[ed] the benefit; [and] (3) the defendant retain[ed] the benefit although retaining it without payment is inequitable." *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. App. 2011). A party who recovers under an unjust-enrichment theory for benefits conferred under an unenforceable contract is often said to recover in quantum meruit. *See Roaderick v. Lull Eng'g Co., Inc.*, 296 Minn. 385, 388, 208 N.W.2d 761, 764 (1973) (holding that party to unenforceable oral contract may recover for reasonable value of services in quantum meruit); *see also Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984) (equating unjust enrichment with quantum meruit).

We review the district court's decision to award equitable relief for abuse of discretion. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011). Under an abuse-of-discretion standard, we may overrule the district court when the court's ruling is based on an erroneous view of the law. *Id.* at 24. We shall not set aside findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. Findings of fact are clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted). Additionally, we give due regard to the "opportunity of the [district] court to judge the credibility of [] witnesses." Minn. R. Civ. P. 52.01. "If the district court's ruling is free of legal or factual errors, we will not overturn the decision unless the court's discretion is exercised in an arbitrary or capricious manner." *Sarpal*, 797 N.W.2d at 24 (quotation omitted).

4

Appellants first argue that the district court erred in allowing respondent to recover under a theory of unjust enrichment without having found that they engaged in "illegality, unlawfulness[,] or moral wrong." However, the cases appellants cite for support are unpersuasive.[1] Additionally, we note that a breaching party—here, respondent—is not precluded from recovering restitution for the benefits it has conferred on a non-breaching party. Restatement (Second) of Contracts § 374 (1981); *accord* Restatement (Third) of Restitution and Unjust Enrichment § 36 (2011) (stating that "[a] performing party whose material breach prevents a recovery on the contract has a claim in restitution against the recipient of performance, as necessary to prevent unjust enrichment"). Appellants' acceptance of work already performed, contemplated as compensable under the contract, without payment is, at a minimum, morally wrong, and therefore the district court did not err by allowing respondent to recover under a theory of unjust enrichment.

Appellants maintain that the district court erred in allowing respondent to recover for the work and materials it expended after the date of contract termination. Appellants' argument is premised on their allegation that "the preponderance of the evidence established that respondent was terminated on or about May 21, 2010, and that most of

---

[1] In *Custom Design Studio v. Chloe, Inc.*, the plaintiff was seeking the value of improvements it made to a property at the request of a contract-for-deed vendee and not the owner at issue in the lawsuit. 584 N.W.2d 430, 431–32 (Minn. App. 1998), *review denied* (Minn. Nov. 24, 1998). This court determined that the defendant's statements, made around the time the plaintiff commenced work on the improvements and apparently consenting to them, were not "evidence of an affirmative action to inappropriately lure" the plaintiff into making the improvements. *Id.* at 433. These facts are dissimilar to the present case. Here, the work respondent performed was done at the request of appellants pursuant to the contract the parties had in place before termination. *Brakke v. Hilgers* is also unpersuasive as it involved statutory cancellation on an executory real estate contract. 374 N.W.2d 553, 556 (Minn. App. 1985).

the work on the premises was completed by respondent on May 26, 2010[,] and thereafter." However, the district court found that "[w]ork was performed by [respondent] until May 27, 2010[,] when the [appellants] withdrew from the contract and excluded [respondent] from the property." The district court did not find that appellants terminated the contract on May 21, 2010, and it did not find that "most of the work . . . was completed by respondent" after contract termination.

At trial, there was conflicting testimony as to when appellants terminated the contract. Robert Davis, respondent's owner, testified that on May 27, 2010, Morgan Althoen called him and told him to "hold up on the project." He stated that when he returned the following week, the locks had been changed. Both appellants testified that Morgan Althoen fired respondent in a phone conversation with Davis on May 21.

Given the conflicting testimony and giving due regard to the district court's opportunity to judge the credibility of witnesses, it was not clearly erroneous for the district court to find that the contract was terminated on May 27 and not May 21. As a result, it was not clearly erroneous for the district court to find that no work was performed after the contract was terminated, given the absence of testimony that respondent performed work after May 27.

Appellants finally assert that the district court clearly erred in its determination of the value of respondent's unpaid work. They argue that the district court should have determined that respondent was only entitled to $6,733.23 for the work it performed and the materials it used on their property, and that because respondent had already been paid $10,887.93, the district court should have found that respondent was overpaid $4,154.70

6

and awarded appellants this amount. For support, appellants cite to the deposition testimony of Mike Lindberg, the field adjuster who handled appellants' insurance claim in 2010. Lindberg testified that, in May 2012, he placed a value of $6,733.23 on the work respondent had completed under the insurance estimate he had prepared, based on his review of photographs taken at appellants' property following respondent ceasing work on the property, as well as his conversations with Wendy Althoen. He testified that this number was only an assessment of work in the insurance estimate, and not of extras completed outside the scope of the estimate. Lindberg never personally viewed the work performed by respondent and did not contact respondent in preparing the estimate; relying instead solely on the photographs and his conversations with Wendy Althoen.

Appellants also cite to the testimony of Kerry Meyers, their contractor hired after respondent was locked out. He testified that some of the work in the insurance estimate had not been completed when he began working on appellants' property and that he had to alter some of the work that had already been completed.

Conversely, Davis testified that respondent was owed $17,824.09 for the insurance-estimate portion of the work, and that $6,936.16 was still owed on this portion after considering appellants' prior payment. He further testified that respondent was owed an additional amount for "extras" that were performed on the project, based on the extras clause in the contract. Davis based his testimony on the bill he prepared after work ceased on appellants' home.

The district court's determination of the value of respondent's unpaid work is not clearly erroneous. The evidence presented at trial to support respondent's claim for time

and materials expended—Davis's testimony and the bills he prepared—was not overwhelming. However, the testimony of Lindberg and Meyers that appellants proffer in rebuttal is inconclusive. The Lindberg estimate occurred two years after respondent ceased working on appellants' property and was based not on a firsthand review of the property, but on photos taken by another contractor and Lindberg's conversations with Wendy Althoen. In addition, Lindberg testified that his evaluation did not include any extras that respondent may have completed. Similarly, Meyers testified that Davis left some projects incomplete and altered other projects when he began work. However, it is unclear how this testimony should impact valuing the work respondent performed on the property, since the only evidence presented relating to the value of the work Meyers completed was what appellants paid him to complete the insurance-estimate work. In light of this conflicting testimony and the deference we give the district court's opportunity to judge the credibility of witnesses, the district court's findings as to the time and materials respondent expended for the insurance-estimate work and extras are not clearly erroneous. Accordingly, we affirm the judgment of $13,363.85 for the work respondent performed and the expenses it incurred.

## II.    The district court erred by awarding respondent attorney fees and interest.

Appellants argue that the district court erred by awarding respondent attorney fees and interest under the terms of the parties' contract. "We review the district court's award of attorney fees or costs for abuse of discretion." *Brickner v. One Land Dev. Co.*, 742 N.W.2d 706, 711 (Minn. App. 2007), *review denied* (Minn. Mar. 18, 2008).

8

Generally, "[r]ecovery of attorney fees must be based on either a statute or a contract." *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 87 (Minn. 2004).

Appellants maintain that the district court's award of attorney fees and interest under the parties' contract is irreconcilable with the court's determination that appellants validly terminated the contract and the court's conclusion that respondent could recover under a theory of unjust enrichment. We agree. Recovery under a theory of unjust enrichment is only available when no enforceable contract is available. *Caldas*, 820 N.W.2d at 838. This is in accord with the general principle that "[e]quitable relief is available only upon a showing that no adequate legal remedy exists." *Stocke v. Berryman*, 632 N.W.2d 242, 245–46 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001); *see also ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996) (stating that "[a] party may not have equitable relief where there is an adequate remedy at law available").

Here, however, respondent can recover under a theory of unjust enrichment because it cannot enforce the contract. If the contract is unenforceable, it necessarily follows that the provision allowing for the recovery of attorney fees and interest also cannot be enforced. *See, e.g., Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*, 243 P.3d 1106, 1110 (Kan. Ct. App. 2010) (explaining that, if a contract is unenforceable, its attorney-fee provisions also cannot be enforced); *Vining v. Carmona*, 596 So.2d 154, 155 (Fla. Dist. Ct. App. 1992) (rejecting appellant's argument for contractual attorney fees because recovery was under theory of quantum meruit). The

district court therefore erred by awarding respondent attorney fees and interest under the terms of the parties' contract, and we reverse the judgment in this respect.

**III.   The district court erred by ordering appellants to deposit money into a trust account.**

Appellants assert that the district court erred by ordering them to put money into a trust account in accordance with an order it issued before trial. At a pretrial hearing on a motion for a continuance brought by appellants, the district court granted the continuance, but ordered appellants to place money into a joint account to be held in trust. The district court did not articulate a legal basis for ordering appellants to deposit funds into a trust account at the pretrial hearing, referring to the required deposit as "like a bond filed for [a] continuance except [] cash." In its order after trial, the district court directed appellants to comply with this pretrial order.

Respondent argues that the district court had the authority to require that money be deposited in a trust, citing cases addressing a district court's discretion to issue sanctions. But the district court never stated that it was sanctioning appellants. *Black's Law Dictionary* defines "sanction" as "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." *Black's Law Dictionary* 1458 (9th ed. 2009). While respondent asserts that the trust-account deposit was required as a result of appellants' prior requests for continuances, the record reflects that the district court also considered appellants' counsel's unexpected illness. There is no evidence that the pretrial order was issued as punishment for appellants' requests for continuances or for appellants' failure to comply with any other law, rule, or order. The authority respondent

cites outlining the discretion district courts are given in issuing sanctions is therefore inapplicable.

Appellants maintain that the district court's order was effectively an order for attachment under Minn. Stat § 570.01 (2012) and that the court failed to make any findings as to the requisite grounds for attachment under Minn. Stat. § 570.02 (2012). Minn. Stat. § 570.01 directs that "[a]s a proceeding ancillary to a civil action for the recovery of money . . . the claimant, at the time of commencement of the civil action or at any time afterward, may have the property of the respondent attached . . . as security for the satisfaction of any judgment that the claimant may recover." Attachment requires that the claimant file a motion accompanied by an affidavit "setting forth in detail: (1) the basis and amount of the claim . . . ; and (2) the facts which constitute one or more of the grounds for attachment as specified in section 570.02." Minn. Stat. § 570.026, subd. 1 (2012). Minn. Stat. § 570.02, subd. 1, provides an exclusive list of six grounds upon which "[a]n order of attachment that is intended to provide security for the satisfaction of a judgment may be issued." A district court may not issue an order for attachment without finding "the claimant has demonstrated the probability of success on the merits, and the claimant has demonstrated facts that show the existence of at least one of the grounds stated in section 570.02." Minn. Stat. § 570.026, subd. 3 (2012).

Here, there is no evidence that the requirements of the attachment statute were met. Respondent never filed a motion for attachment, and the district court never made any of the requisite findings. Because we are unable to discern any legal basis for the

11

district court's order that appellants deposit money into a trust account, we reverse this portion of the district court's order.

**IV.** **The district court did not err by failing to find that respondent violated the covenant of good faith and fair dealing.**

Lastly, appellants assert that the district court erred by failing to find that respondent violated the covenant of good faith and fair dealing. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (quotation omitted). To establish a violation of the covenant of good faith and fair dealing, "a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." *Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. App. 2004).

Appellants maintain that respondent breached the covenant of good faith and fair dealing in three ways. First, they allege that respondent failed to provide cost estimates when requested. Second, appellants assert that respondent diverted funds that should have been paid to a subcontractor, in violation of various statutory provisions. Thirdly, they allege that Davis treated Wendy Althoen with a "contemptuous, disrespectful[,] and . . . prejudicial attitude."

The district court did not make findings consistent with appellants' first and third claimed breaches. And irrespective of the district court's findings, appellants have not shown that any of respondent's conduct justifies a determination that respondent violated

the covenant of good faith and fair dealing. None of appellants' assertions allege "an ulterior motive for [respondent's] refusal to perform a contractual duty." *See Minnwest Bank Cent.*, 689 N.W.2d at 303. They do not demonstrate that respondent "unjustifiably hinder[ed] [appellants'] performance of the contract." *See In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d at 502 (quotation omitted). We affirm the district court's denial of appellants' claim that respondent violated the covenant of good faith and fair dealing.

**Affirmed in part and reversed in part.**