Oscar CALDAS, et al., Appellants,

v.

AFFORDABLE GRANITE & STONE, INC., Respondent,

Dean Soltis, Defendant.

No. A10–2173.

Supreme Court of Minnesota.

Sept. 26, 2012.

Justin D. Cummins, Brendan D. Cummins, Miller O'Brien Cummins, PLLP, Minneapolis, MN, for appellants.

David M. Wilk, Paula Duggan Vraa, Jennifer L. Young, Larson King, LLP, St. Paul, MN, for respondent.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kelly S. Kemp, Assistant Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, MN, for amicus curiae State of Minnesota.

Susan L. Segal, City Attorney, Peter W. Ginder, Deputy City Attorney, Minneapolis, MN, for amicus curiae City of Minneapolis.

Michael O. Freeman, Martin D. Munic, Daniel D. Kaczor, Minneapolis, MN, for amicus curiae Hennepin County Attorney Michael O. Freeman.

Mike L. Wilde, Kelly K. Francis, St. Paul, MN, for amicus curiae Fair Contracting Foundation.

Leslie L. Lienemann, Culberth & Lienemann, LLP, St. Paul, MN, Stephen L. Smith, The Law Firm of Stephen L. Smith, Dorene R. Sarnoski, Dorene R. Sarnoski Law Office, Minneapolis, MN, for amicus curiae National Employment Lawyers Association, Minnesota Chapter.

Dean B. Thomson, Jesse R. Orman, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for amici curiae Carpentry Contractors Association, Minnesota Drywall and Plaster Association, Minnesota Environmental Contractors Association, Minnesota Mechanical Contractors Association, Minnesota Painting and Wallcovering Employers Association, Sheet Metal, Air Conditioning, & Roofing Contractors Association, Inc., and Thermal Insulation Contractors Association.

OPINION

DIETZEN, Justice.

The issue before us is whether appellants, who were employees of a contractor

that performed work pursuant to a municipal contract with the City of Minneapolis (City), may recover for the contractor's alleged breach of a prevailing wage provision in the contract. Appellants Oscar Caldas, et al., were employed by respondent Affordable Granite & Stone, Inc. (AGS), to perform work at the Minneapolis Convention Center pursuant to a contract between AGS and the City. After completion of the project, appellants brought this action against AGS, alleging (1) that AGS failed to pay them the prevailing wage in breach of the contract with the City and that they are entitled to enforce the contract as third-party beneficiaries, (2) that the breach of the contract by AGS violated state wage statutes, and (3) that AGS was unjustly enriched as a result. The district court granted AGS's motion for summary judgment, concluding that appellants were not intended third-party beneficiaries and that without a viable claim for breach of contract, appellants' other claims failed. The court of appeals affirmed, and we granted review. Because we conclude that appellants are not intended third-party beneficiaries of the contract and that appellants' other claims lack merit, we affirm.

The material facts of this case are undisputed. In June 2007 the City issued a Request for Proposal (RFP) to repair and restore "terrazzo flooring, granite wainscoting, restroom floor and wall tile, and exhibition hall concrete flooring" at the Minneapolis Convention Center. The RFP stated that the selected contractor "will be asked to provide an action plan and timeline to completely repair all imperfections and polish approximately 130,000 square feet of terrazzo flooring."

In July 2007 AGS filed a Submittal Request for Proposal with the City. The proposal stated, among other things, that the terrazzo tile "could be repaired and did not need to be replaced," and that "cost savings" would result by restoring existing terrazzo rather than replacing the entire terrazzo floor. AGS proposed to utilize "a team of ten Floor Technicians led by three Onsite Foremen" to "effectively carry out the scope of the work." The proposal also contained a prevailing wage certificate signed by AGS President Dean Soltis. The prevailing wage certificate explicitly incorporated the Contracts for Public Works Ordinance of the Minneapolis Code of Ordinances, which includes the prevailing wage ordinance. Minneapolis, Minn., Code of Ordinances tit. 2, ch. 24, art. IV, §§ 24.200–.260. The prevailing wage certificate provides:

> Laborers and Mechanics shall be paid according to the [Public Works Ordinance], as amended, and the minimum wage rates and fringe benefits paid to the various classes shall be as determined by the Secretary of Labor of the United States for work in the City. Subject to and upon compliance with all requirements provided in the Rules of the Office of the Secretary of Labor of the United States.

Subsequently, the City chose AGS to perform the work at the Convention Center.

In December 2007 the City and AGS entered into a contract to perform the agreed-upon repair work at the Convention Center. The contract expressly incorporated the RFP and the proposal from AGS, including the prevailing wage certificate that Soltis had executed on behalf of AGS.

The AGS portion of the project commenced in December 2007 and continued through approximately August 2008.[1] Following consultation with the Service Em-

---

1. Appellants dispute the project's end date, but that dispute is immaterial to this appeal.

ployees International Union (SEIU) Local 26 and review of a collective bargaining agreement, AGS determined that appellants' work should be classified as repair persons/specialty crew, and that the prevailing wage for the work was $16.28 per hour. All parties agree that AGS paid appellants at this hourly rate throughout the project.

Several unions, however, complained to the City that appellants should have been classified as terrazzo mechanics and paid the higher prevailing wage of $44.31 per hour. Following an investigation, the Director of the City's Department of Civil Rights sent a letter dated September 12, 2008, to AGS and the unions, concluding that AGS was "paying the laborers in question an appropriate wage for the work that was being done and that there was no violation of the prevailing wage standards." According to the Director, the critical issue was whether the work performed at the Convention Center should be classified as "construction" or "janitorial or maintenance." He concluded that the work was "janitorial or maintenance" in nature and that AGS had paid appellants the appropriate prevailing wage of $16.28 per hour. A union official contacted the Hennepin County Attorney's Office and requested that it investigate the matter. As a result, a county prevailing wage specialist assisted the City's Department of Civil Rights in conducting a further investigation. Following the additional investigation, the prevailing wage specialist drafted a letter that reaffirmed the Director's previous determination and forwarded it to the Director for his signature. The letter, however, was never distributed to appellants or AGS. The Director then sent a letter to AGS's attorney requesting "complete payroll documentation," but the City did not further pursue the matter.

Subsequently, appellants sued AGS for breach of contract; alleged violations of the Payment of Wages Act, Minn.Stat. §§ 181.01–.171 (2010) and alleged violations of the Minnesota Fair Labor Standards Act, Minn.Stat. §§ 177.21–.35 (2010); and unjust enrichment. Appellants alleged that they were intended third-party beneficiaries under the contract between AGS and the City, that AGS breached the contract by failing to pay them as terrazzo mechanics, tile layers, and/or cement masons, and therefore the appellants were entitled to recover the prevailing wage from AGS. As a result of AGS's failure to pay them as terrazzo mechanics, appellants also argued that AGS violated the Payment of Wages Act and the Minnesota Fair Labor Standards Act, and that AGS was unjustly enriched.

Following discovery, both parties moved for summary judgment. The district court granted AGS's motion for summary judgment and dismissed appellants' breach of contract claim because appellants failed to establish they were intended third-party beneficiaries of the contract. Additionally, the court dismissed appellants' other causes of action because they lacked merit. The court of appeals affirmed. *Caldas v. Affordable Granite & Stone, Inc.,* A10–2173, 2011 WL 1938307, at *5 (Minn.App. May 23, 2011). We granted review.

I.

Appellants argue that the district court erred in granting summary judgment in favor of AGS. We review decisions granting summary judgment to determine whether there are any genuine issues of material fact that would preclude summary judgment, and whether the district court erred in its application of the law. *Dykes v. Sukup Mfg. Co.,* 781 N.W.2d 578, 581 (Minn.2010). In doing so, we view the evidence in the light most favorable to the

party against whom judgment was granted. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009). We review the district court's application of the law de novo. *Dykes*, 781 N.W.2d at 581.

Appellants raise three issues on appeal. First, appellants argue that they have a legal right to enforce the contract between AGS and the City because they are intended third-party beneficiaries of the contract. According to appellants, the contract between AGS and the City requires AGS to pay the appellants the prevailing wage for terrazzo mechanics, and therefore they are entitled to the difference between the prevailing wage of $16.38 actually paid per hour for janitorial or maintenance workers and the prevailing wage of $44.31 per hour for terrazzo mechanics. Essentially, appellants contend that AGS misclassified their work as janitorial or maintenance work and that they have a right under the contract between AGS and the City to challenge that classification.

■ Contract interpretation is a question of law that we review de novo. *Valspar*, 764 N.W.2d at 364. We review the language of a contract to determine the intent of the parties. *Dykes*, 781 N.W.2d at 582. When the language of a contract is clear and unambiguous, we enforce the agreement of the parties as expressed in the contract. *Id.* But if the language is ambiguous—that is, susceptible to more than one reasonable interpretation—parol evidence may be considered to determine the intent of the parties. *Id.; Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369 (Minn.2005). "Whether a contract is ambiguous is a question of law that we review de novo." *Dykes*, 781 N.W.2d at 582.

■ Generally, one who is not a party to a contract has no rights under the contract, but a third party "may enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration." *N. Nat'l Bank of Bemidji v. N. Minn. Nat'l Bank of Duluth*, 244 Minn. 202, 208–09, 70 N.W.2d 118, 123 (1955). "[T]he contractual right which third-party beneficiaries acquire under the doctrine is to enforce a promise made for their benefit which they otherwise would not be able to enforce." *Id.* at 209, 70 N.W.2d at 123.

■ We have adopted the Restatement (Second) of Contracts § 302 (1981) to determine whether a beneficiary of a promise is an intended beneficiary with legal rights under a contract or merely an incidental beneficiary with no legal rights. *Cretex Cos. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn.1984); *see also Hickman*, 695 N.W.2d at 369–70 (stating that an intended beneficiary under a section 302 analysis has a contractual right to enforce a promise); *Duluth Lumber & Plywood Co. v. Delta Dev., Inc.*, 281 N.W.2d 377, 384–86 (Minn.1979) (applying incidental, intended beneficiary analysis). The Restatement provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302. Under section 302, a third party is an intended beneficiary under a contract when it is appropriate to recognize third-party beneficiary rights to effectuate the intent of the parties to the contract, and either the duty owed or the intent-to-benefit test is satisfied. *Cretex Cos.,* 342 N.W.2d at 139. A third party to the contract who does not meet this standard is merely an incidental beneficiary and has no right to enforce the contract. *See id.*

In this case, appellants argue that there is an intent to benefit them under section 302, subpart 1(b). Accordingly, we must determine whether the promisee (City) intended to give the beneficiary (appellants) the benefit of the promisor's (AGS) performance *and* whether recognizing a right to performance in appellants is appropriate to effectuate the intent of the City and AGS in making the contract. In determining the parties' intent, we look to the language of the contract. *See Cretex Cos.,* 342 N.W.2d at 140; *see also Hickman,* 695 N.W.2d at 370 n. 7 (noting that "the objective manifestation of intent controls").

In *Hickman,* we considered the question of whether a borrower under a note was a subpart 1(b) intended third-party beneficiary of a fire and windstorm insurance policy issued to a mortgage company. 695 N.W.2d at 366. We answered that question in the affirmative on the basis that the insurance policy recognized, among other things, the class of persons of borrowers, provided for coverage in excess of the mortgage company's interest and for loss of personal property, and provided for payment directly to the borrower. *Id.* at 370–71. Importantly, we observed that under the intent-to-benefit test, the circumstances indicated that the promisee intended to give the beneficiary the benefit of the promise. *Id.* In doing so, we looked to the language of the policy to make that

determination. *Id.* at 171 (declining to rely on extrinsic evidence because the contract language clearly indicated that the borrower was an intended beneficiary of the policy).

Appellants rely on the contract language to argue that the City intended to benefit them. Specifically, the contract provides:

> [I]t is agreed that payment of wages to employees or agents of the Contractor or any Subcontractor shall be no less than the amounts set forth in the current U.S. Department of Labor, General Wage Decision for the State of Minnesota–Hennepin County.

According to appellants, this provision of the contract clearly manifests an intent to benefit them.

We examine the contract as a whole to ascertain the intent of AGS and the City. *See Halla Nursery, Inc. v. City of Chanhassen,* 781 N.W.2d 880, 884 (Minn.2010). The contract contemplates that AGS will classify the work performed by appellants in accordance with existing U.S. Department of Labor criteria and that AGS will pay appellants the prevailing wage for that classification. The promise at issue is the promise of AGS that employees will be properly classified and paid the prevailing wage for that classification.

In determining whether there is an intent to benefit a third party through a promise in a government contract, we consider whether the contract provides a remedy for enforcement of the promise. *See* 9 J. Murray, *Corbin on Contracts* § 45.6 (rev. ed. 2007) ("The distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is emphasized where the promisee is a governmental entity."). As the Restatement recognizes, "Government contracts often benefit the public, but individual members of the public are treated as inci-

dental beneficiaries unless a different intention is manifested." Restatement (Second) Contracts § 313 cmt. a (1981); *see Speleos v. BAC Home Loans Servicing, L.P.,* 755 F.Supp.2d 304, 310 (D.Mass.2010) (noting the "general proposition" that "public citizens are not intended third-party beneficiaries to government contracts despite the fact that such contracts are usually intended to benefit the public in some way"). Therefore, because of "the complications that would ensue from private enforcement of government contracts by members of the general public," courts require a showing that the parties clearly intended that third parties be permitted to enforce the contract. *Edwards v. Aurora Loan Servs., LLC,* 791 F.Supp.2d 144, 151 (D.D.C.2011).

■ In this case, the contract does not manifest an intention that the employees of AGS have the right to enforce the prevailing wage provision. Rather, the contract gives only the City the right of enforcement. The contract specifically grants to the City the right to enforce the promise against AGS, either through the prevailing wage certificate, the Public Works Ordinance, or at common law. The prevailing wage certificate states:

> Failure to comply with [the Public Works Ordinance] shall mean the City may, by written notice to the Contractor, terminate the Contractor's right to proceed with the work and the Contractor and the Contractor's Sureties shall be liable to the City for any excess cost

occasioned to the City for the completion of the work.

Similarly, the Public Works Ordinance, which is incorporated by reference into the prevailing wage certificate, allows the City to challenge misclassification or underpayment of wages paid under a public contract. Minneapolis, Minn., Code of Ordinances tit. 2, ch. 24, art. IV, §§ 24.200–.260. The Ordinance requires a prospective contractor to submit to the City, before the contract is awarded, a list of the various classes of laborers and mechanics to be employed on the project, "together with a schedule of wage rates and fringe benefits to be paid to such employees." *Id.* § 24.230. Once the contract has been awarded, the contractor is required to cooperate with any City investigation regarding compliance with the prevailing wage requirements. *Id.* § 24.240. If the City finds that the contractor is paying its employees less than the required wage, the City may terminate the contract and complete the work with a different contractor, suspend or disbar the contractor from future work for the City, and seek damages from the contractor for any costs incurred. *Id.* § 24.250. Additionally, the City may withhold payments under the contract to the extent of the underpayment of required wages. *Id.*

Appellants concede that they have no private right of action to enforce the prevailing wage requirements of the Public Works Ordinance. Further, appellants concede that the Ordinance and contract "provide administrative remedies only."[2]

**2.** Appellants and some amici rely on the Davis–Bacon Act, 40 U.S.C. §§ 3141–48 (2006), and the prevailing wage statutes of other states to argue that we should recognize them as intended third-party beneficiaries of the contract. Appellants' claim, however, is a common-law, third-party beneficiary claim for breach of contract; their claim is not predicated on the Davis–Bacon Act or any

other statute. As a result, cases deciding whether private statutory causes of action exist under federal or state statutes are not relevant to the question of whether the City intended appellants to benefit from the prevailing wage provision in the contract. We observe that the United States Supreme Court has not ruled on whether the Davis–Bacon Act creates an implied private cause of action,

The City exercised its right under the contract to investigate the alleged prevailing wage violations and made a finding that there had not been a violation. The City then voluntarily abandoned its administrative remedies.

We conclude that appellants have failed to show that recognition of intended third-party beneficiary rights is appropriate to effectuate the intention of the parties to the contract. The promise of AGS to properly classify work in accordance with U.S. Department of Labor criteria and to pay the prevailing wage to employees was a general promise to comply with the law, which does not confer upon AGS employees the right to enforce the law. For example, the Supreme Court recently rejected third-party beneficiary status for health care facilities that alleged they were overcharged for certain drugs purchased from manufacturers that had entered into pharmaceutical pricing agreements with the federal government. *Astra USA, Inc. v. Santa Clara Cnty.*, —— U.S. ——, 131 S.Ct. 1342, 1348, 179 L.Ed.2d 457 (2011). The Supreme Court ruled that the healthcare facilities could not sue the drug manufacturers as third-party beneficiaries when the agreements simply "incorporate[d] statutory obligations and record[ed] the manufacturers' agreement to abide by them." *Id.; see also D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1479–80 (7th Cir.1985) (concluding that employee of a government contractor could not maintain third-party

beneficiary action against contractor on basis of affirmative-action clauses required in government contracts by the Rehabilitation Act). Therefore, appellants do not have a right to enforce the prevailing wage requirements when the contract merely confirmed that AGS would comply with the prevailing wage requirements of the City ordinance and did not otherwise demonstrate any intention to allow the affected employees to enforce those requirements.

■ Amicus City asserts that it intended to give appellants the benefit of the contract, and therefore we should treat appellants as intended beneficiaries under the contract. To determine intent, however, we must examine "the objective manifestation of intent" that appears in the terms of the contract, "not the parties' subjective intent." *Hickman*, 695 N.W.2d at 370 n. 7. As we have explained, the contract clearly expresses the intent that the City, not appellants, has the right to enforce the promised performance. We recognize that appellants do derive some incidental benefit from the proper classification of their work under the Public Works Ordinance and the prevailing wage certificate. Because the contract does not evidence an intent by the City and AGS that appellants are the intended beneficiaries of that promise, we conclude that it is not appropriate to recognize appellants as intended third-party beneficiaries.

and there is a circuit split on the issue among the United States Courts of Appeal. *See, e.g., Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 769 n. 19, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) (declining to reach issue of whether the Davis–Bacon Act creates an implied right of action). *Compare McDaniel v. Univ. of Chi.*, 548 F.2d 689, 695 (7th Cir.1977) (finding implied private right of action in Davis–Bacon Act), *with U.S. ex rel. Glynn v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1317 (5th Cir.1980) (finding no implied private right of

action in Davis–Bacon Act). It is not necessary for us to reach the issue of whether the presence or absence of an implied cause of action under the Davis–Bacon Act suggests something about the City's intent with regard to the contract and therefore we decline to reach the issue. We rest our conclusion on the ground that appellants' common law breach of contract claim fails because they have not established they are intended third-party beneficiaries of the contract.

## II.

Second, appellants argue that the district court erred in granting summary judgment in favor of AGS and dismissing their payment of wage claims brought under Minn.Stat. §§ 181.01–.171,[3] which decision was affirmed by the court of appeals. Specifically, appellants contend that their wage claim should be allowed to proceed because wages were "mandatory" and "actually earned" under section 181.13.

Statutory interpretation is a question of law that we review de novo. *Engquist v. Loyas,* 803 N.W.2d 400, 403 (Minn.2011). The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2010); *accord Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn. 2010). If the language of the statute is clear and free from ambiguity, the court's role is to enforce the language of the statute and not explore the spirit or purpose of the law. Minn.Stat. § 645.16. Additionally, when we have interpreted a statute, that interpretation guides us in reviewing subsequent disputes over the meaning of the statute. *See Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 172 (Minn.2010). Specifically, judicial construction of a statute becomes part of the statute as though written therein. *Sandal v. Tallman Oil Co.,* 298 Minn. 264, 268, 214 N.W.2d 691, 693 (1974) (citing *Roos v. City of Mankato,* 199 Minn. 284, 288, 271 N.W. 582, 584 (1937)).

To determine whether appellants have a viable payment of wage claim, we must examine the statute and applicable case law, and then apply the law to appellants' claim. Generally, the Payment of Wages Act sets forth requirements and restrictions respecting the method, timing, and procedures by which wages are paid in Minnesota. Minn.Stat. §§ 181.01–.171. The purpose of the Payment of Wages Act is to penalize employers that fail to promptly pay their employees' wages. *Hansen v. Remer,* 160 Minn. 453, 462, 200 N.W. 839, 843 (1924). An individual may bring a civil action against a former employer at the end of the individual's employment to redress violations of the employer's obligation to promptly pay wages to the individual. Minn.Stat. § 181.171. The payment requirements vary somewhat depending upon whether the employer discharged the employee, or the employee quit or resigned. *See* Minn.Stat. §§ 181.13–.14. We have concluded that sections 181.13 and .14, the provisions governing payment requirements, must be read together. *Chatfield v. Henderson,* 252 Minn. 404, 410, 90 N.W.2d 227, 232 (1958).

It is undisputed that section 181.13(a) is applicable in this case. It provides:

> When any employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default ... until full payment or other settlement ... is made.

Minn.Stat. § 181.13(a). The statute, however, does not define the term "wages," or the phrases "actually earned" or "earned and unpaid."

Initially, appellants argue that the Payment of Wages Act provides an independent cause of action to recover wages. In

---

**3.** Appellants did not appeal the dismissal of their claim under the Minnesota Fair Labor Standards Act, and therefore that claim is not before us.

*Lee v. Fresenius Medical Care, Inc.,* 741 N.W.2d 117, 125–26 (Minn.2007), we considered the meaning of the phrase "actually earned" in section 181.13. We held that "section 181.13(a) is a timing statute, mandating not *what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee." *Id.* at 125. Specifically, we stated that the "wages that an employee has actually earned are defined by the employment contract between the employer and the employee and cannot be determined through a claim brought under section 181.13(a)." *Id.* at 127–28.

 Consequently, we conclude that the Payment of Wages Act does not create a substantive right to the recovery of a particular wage. Instead, section 181.13 is a timing statute that requires prompt payment of wages actually earned. To recover under the statute the employee must establish an independent, substantive legal right, separate and distinct from section 181.13 to the particular wage claimed. Thus, we must determine whether appellants have established a separate substantive legal right to the prevailing wage claimed.

 Appellants point to the contract between the City and AGS, and the Public Works Ordinance as providing the separate substantive legal right to bring their payment of wages claim. They argue that AGS had a legal obligation to pay them the prevailing wage, and therefore their un-

paid wages were "actually earned" within the meaning of section 181.13.

We conclude that appellants' payment of wages claim fails. Specifically, appellants were employees of AGS, and were paid wages in accordance with that employment relationship. Appellants' claim for the higher prevailing wage is predicated upon the contract between the City and AGS, and the Public Works Ordinance incorporated into the contract. Because we conclude appellants are not intended third-party beneficiaries under the contract, they are not entitled to enforce the contract, or the Public Works Ordinance against AGS. Appellants therefore have not "actually earned" the higher prevailing wage within the meaning of section 181.13(a).[4] Consequently, appellants have failed to establish a separate substantive legal right to recover wages that is separate and distinct from section 181.13, and therefore appellants' statutory claim fails.

### III.

Finally, appellants argue that AGS was unjustly enriched by not paying them the terrazzo mechanic's prevailing wage. Appellants urge the court to apply the doctrine of unjust enrichment to require AGS to pay them $44.31 per hour instead of the $16.28 they actually received.

In *SCI Minnesota Funeral Services, Inc. v. Washburn–McReavy Funeral Corp.,* we discussed the standard of review on appeal from a grant of summary judgment involving claims for equitable relief.

---

4. Appellants rely on *Kvidera v. Rotation Engineering & Manufacturing Co.,* 705 N.W.2d 416 (Minn.App.2005), to support their argument that they are not required to have a third-party right under the contract between AGS and the City. But *Kvidera* is a court of appeals opinion and is inapposite. In *Kvidera,* the court of appeals distinguished between a "mandatory" bonus given pursuant to an employee's achievement of *contractually-speci-*

*fied* criteria—which would support a claim under the Payment of Wages Act—and a "discretionary" bonus that has no such *contractual* basis and therefore would not support a claim under the Payment of Wages Act. 705 N.W.2d at 422–23. Thus, *Kvidera* provides no support for appellants' argument that they do not need a contractual or statutory right to recover under the Prevailing Wage Act.

795 N.W.2d 855 (Minn.2011). We concluded that when the relevant facts are undisputed the standard of review is de novo, but a more deferential abuse of discretion standard of review might be applicable where the district court, after balancing the equities, determines not to award equitable relief. *Id.* at 860; *Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 277 n. 2 (Minn.2010). Because we conclude that the claim fails under either a de novo or the more deferential abuse of discretion standard, we decline to resolve the standard of review question in this case.

 Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable. It is commonly referred to as a quasi-contract or a contract implied-in-law claim. It does not apply when there is an enforceable contract that is applicable. In *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, we explained:

> To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay. [U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.

544 N.W.2d 302, 306 (Minn.1996) (internal quotation marks omitted) (citations omitted). We have limited the application of unjust enrichment to claims premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched. *See, e.g., id.* at 306–07 (concluding that home restoration contrac-tor that repaired fire damage to an insured home could not recover on theory of unjust enrichment from insurer for failure to include its name on a settlement check); *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981) (concluding that constructive trust was inappropriate when a bank did not require security for a loan or obtain a potential joint tenant's signature on the promissory note); *Klass v. Twin City Fed. Savs. & Loan Ass'n*, 291 Minn. 68, 69, 190 N.W.2d 493, 493 (1971) (concluding that lessee could recover on theory of unjust enrichment a portion of condemnation award from lessor intended to reimburse for real estate taxes); *Cady v. Bush*, 283 Minn. 105, 110, 166 N.W.2d 358, 361–62 (1969) (concluding that unjust enrichment did not apply when purchasers of motel attempted to recover, upon cancellation of the contract, cash payments made to seller); *Georgopolis v. George*, 237 Minn. 176, 185–86, 54 N.W.2d 137, 142–43 (1952) (concluding that findings supported denying establishment of a constructive trust on the theory that defendant owner of residence was unjustly enriched by plaintiff's contribution to the property).

 Thus, to prevail on a claim of unjust enrichment, a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful. *First Nat'l Bank*, 311 N.W.2d at 504. In this case, appellants' unjust enrichment claim is predicated on the theory that they have a right to be classified as terrazzo mechanics at the corresponding pay rate of $44.31 per hour. For this proposition, they rely on the prevailing wage certificate in the contract between AGS and the City, to which they are only incidental third-party beneficiaries with no rights of enforcement.

We conclude that because appellants are not intended third-party beneficiaries of the contract, their unjust enrichment claim is not legally supportable. Essentially, appellants are attempting to bring an unjust enrichment claim to avoid the result that they lack third-party beneficiary status to enforce the contract. *Cf. U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn.1981) (stating that "equitable relief cannot be granted where the rights of the parties are governed by a valid contract"). Previously, we have not extended the theory of unjust enrichment to allow an incidental third-party beneficiary to enforce a contract, and we decline to do so in this case. Accordingly, we hold that appellants' unjust enrichment claim fails as a matter of law.

Affirmed.

## DISSENT

PAGE, Justice, (dissenting).

I respectfully dissent. I agree with the court that to recover under the Payment of Wages Act, Minn.Stat. § 181.01–.171 (2010), appellants must establish a claim for wages based on contract or on a statute that is separate and distinct from the Act. Because there can be no dispute that Affordable Granite & Stone, Inc., was required by its contract with the City of Minneapolis (City) to pay its employees the prevailing wage, I conclude, based on that contract, that appellants are intended third-party beneficiaries of that contractual requirement. On that basis, I also conclude that appellants are entitled to have their claims go forward. I further conclude, however, that there are genuine issues of material fact as to the prevailing wage for the work appellants performed at the Minneapolis Convention Center. In addition, I conclude that there are genuine issues of material fact as to whether Affordable Granite & Stone was unjustly enriched by its undisputed promise (and alleged failure) to pay appellants the prevailing wage. I therefore would reverse the court of appeals and remand the matter for trial.

## I.

Under the plain language of the prevailing wage certificate executed by Dean Soltis on behalf of Affordable Granite & Stone and specifically incorporated into the contract between Affordable Granite & Stone and the City, "it is agreed that payment of wages to employees or agents of the Contractor or any Subcontractor shall be no less than the amounts set forth in the current U.S. Department of Labor, General Wage Decision for the State of Minnesota–Hennepin County." The court concludes that appellants are merely incidental, not intended, third-party beneficiaries of this promise. I disagree.

Although one who is not a party to a contract generally has no rights under that contract, a third party to a contract "may enforce a promise made for his benefit." *N. Nat'l Bank of Bemidji v. N. Minn. Nat'l Bank of Duluth*, 244 Minn. 202, 208, 70 N.W.2d 118, 123 (1955). In determining whether a promise was made for the benefit of a third party, we have adopted the approach of the Restatement (Second) of Contracts § 302 (1981):

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302(1).

The promise at issue here is Affordable Granite & Stone's promise to pay the prevailing wage to its employees. To determine whether these appellants were intended beneficiaries of that promise, we must determine whether recognition of appellants' right to the prevailing wage "is appropriate to effectuate the intention of the parties" and whether "the circumstances indicate that [the City] intends to give [appellants] the benefit of the promised performance."

Both requirements of section 302 are satisfied. It is undisputed that the City intended that Affordable Granite & Stone's employees be paid the prevailing wage for their work. The prevailing wage certificate, which is incorporated by reference into the contract between Affordable Granite & Stone and the City, specifically provides: "it is agreed that payment of wages to employees or agents of the Contractor or any Subcontractor shall be no less than" the prevailing wage. Nor is there any dispute that by executing the prevailing wage certificate, Affordable Granite & Stone agreed to pay its employees the prevailing wage. Again, the prevailing wage certificate provides: "By submitting this bid, it is understood and agreed that if it is accepted, in whole or in part, by the City of Minneapolis ... that any work done by the Contractor ... shall be done in conformity with [the prevailing wage ordinance.]"

Given that the City intended that Affordable Granite & Stone's employees be paid the prevailing wage for their work, and given that Affordable Granite & Stone agreed to pay its employees the prevailing

wage for their work, the question becomes whether recognition of appellants' right to enforce Affordable Granite & Stone's promise to pay the prevailing wage is "appropriate to effectuate the intention of the parties." To ask the question is to answer it. If, as appellants contend (a contention I address below), appellants were not paid the prevailing wage for the work they performed, neither Affordable Granite & Stone nor the court itself has indicated any other way in which appellants can recover.

As to the second part of the test—whether the circumstances indicate that the promisee (the City) intended to give the beneficiary (these appellants) the benefit of the promised performance (payment of the prevailing wage)—to ask the question is also to answer it. Again, under the plain language of the prevailing wage certificate, incorporated by reference into the contract between Affordable Granite & Stone and the City, "payment of wages to employees or agents of [Affordable Granite & Stone] ... shall be no less than" the prevailing wage. It is undisputed that these appellants were employees of Affordable Granite & Stone. If Affordable Granite & Stone's promise to pay its employees the prevailing wage for their work on the Convention Center was not meant to benefit these appellants, for whose benefit was it intended?

The court reaches the opposite conclusion on the second part of the test—whether the contract indicates an intent to benefit appellants. The court compares the contract at issue here unfavorably with the insurance policy at issue in *Hickman v. SAFECO Insurance Co. of America*, 695 N.W.2d 365, 369 (Minn.2005). We said in *Hickman* that under section 302 of the Restatement, "the circumstances must indicate that the promisee ... intends to give the beneficiary ... the benefit of the promise." 695 N.W.2d at 370. In consid-

ering the circumstances in *Hickman,* we looked to the language of the contract at issue—an insurance policy force-placed by the bank holding the mortgage on Hickman's home after Hickman himself failed to insure the property against loss—to see if Hickman was entitled to any portion of the policy proceeds. *Id.* at 370–71.

We noted several policy provisions that supported Hickman's status as an intended third-party beneficiary of the policy. *Id.* Although Hickman was not identified by name in the policy, "as the mortgagor of an insured location" he was within the policy's definition of a "borrower." *Id.* at 370. The policy provided that amounts payable in excess of the bank's interest in the property would be paid to the "borrower." *Id.* at 370. The policy included coverage for personal property, even though the mortgagee had no insurable interest in that personal property, and provided that the insurer would pay the "borrower" for losses to it. *Id.* at 370. Finally, the borrower had the right "to seek arbitration of the appraisal of a loss covered by the policy" if the borrower disagreed with the amount of loss determined by the insurer. *Id.* at 370–71. We concluded "that these provisions of the insurance contract establish that [the mortgagee] intended to give Hickman the benefit of some of the promised insurance proceeds," making Hickman a third-party beneficiary to the insurance policy. *Id.* at 371.

The court here cites three aspects of the insurance policy at issue in *Hickman*— "that the insurance policy recognized, among other things, the class of persons of borrowers, provided for coverage in excess of the mortgage company's interest and for loss of personal property, and provided for payment directly to the borrower"—as indicative of the mortgagee's intent to give Hickman the benefit of the policy. The court apparently sees these provisions as

determinative differences between the insurance policy at issue in *Hickman* and the contract at issue here, but I see similarities. The insurance policy at issue in *Hickman* specifically recognized "borrowers." *See* 695 N.W.2d at 370. The contract at issue here specifically recognizes Affordable Granite & Stone's "employees or agents." The insurance policy in *Hickman* provided for coverage in excess of the lender's interest in the property and for the loss of personal property in which the lender had no interest, *see id.*—monies that could not be paid to the lender. Here, the contract specifically provides for payment of prevailing wages—monies that could not be paid to the City and could only be paid to these appellants. Finally the insurance policy at issue in *Hickman* provided for payment directly to the "borrower," namely, Hickman. *See id.* Here, the contract specifically provides that prevailing wages will be paid to Affordable Granite & Stone's employees, and specifically requires Affordable Granite & Stone to pay them.

To be sure, the contract between Affordable Granite & Stone and the City is silent as to employees' rights to enforce the prevailing wage provision. That omission is unremarkable given that, as the court itself acknowledges, the very thing that intended third-party beneficiaries acquire by virtue of their status is the right "to enforce a promise made for their benefit *which they otherwise would not be able to enforce.*" *N. Nat'l Bank of Bemidji,* 244 Minn. at 209, 70 N.W.2d at 123 (emphasis added). Put more succinctly, if the contract specifically gave these appellants the right to enforce Affordable Granite & Stone's obligation to pay its employees the prevailing wage, they would not need the third-party beneficiary doctrine.

The court also appears to require much more specificity in the contractual lan-

guage to confer third-party beneficiary status than we have required in the past. For example, the promise we held enforceable by the third-party beneficiary in *La Mourea v. Rhude* made the defendants " 'liable for any damages done to the work or other structure or public or private property and injuries sustained by persons.' " 209 Minn. 53, 54, 295 N.W. 304, 305 (1940). The promise we held enforceable by the third-party beneficiary in *Duluth Lumber & Plywood Co. v. Delta Development, Inc.*, was even less specific, requiring the local housing authority to " 'retain at least 10% of the amount of each periodic estimate until final completion and acceptance of all work covered by the particular contract.' " 281 N.W.2d 377, 379 (Minn. 1979). The promise we held enforceable by the third-party beneficiary in *Hickman* was simply to pay the borrower, without specifying either the identity of the borrower or the particular amount to be paid. 695 N.W.2d at 370. I question whether any of the parties we held to be third-party beneficiaries in *Hickman, Duluth Lumber,* or *La Mourea* would qualify under the standards the court applies to appellants in this case.

I would therefore conclude that these appellants are intended third-party beneficiaries of the contract between Affordable Granite & Stone and the City, and I would reverse the court of appeals on that point. However, I would not direct entry of judgment in appellants' favor because I conclude there are genuine issues of material fact as to the particular prevailing wage the appellants should have been paid and for what period of time. Significantly (and contrary to the court's opinion), some employees of Affordable Granite & Stone were in fact paid the prevailing wage for terrazzo mechanics for a portion of the Convention Center project, apparently after demanding such payment. The employer contends that only the employees paid the prevailing wage for terrazzo mechanics actually did the work of a terrazzo mechanic; appellants contend that they all performed the same tasks and should be paid accordingly. Thus, there are genuine issues of material fact as to which employees performed work as terrazzo mechanics and for which portions of the Convention Center project. Therefore, remand to the district court for trial on appellants' prevailing wage claim is the appropriate remedy.

## II.

The court concludes that "because appellants are not intended third-party beneficiaries of the contract, their unjust enrichment claim is not legally supportable." Again, I disagree.

Unjust enrichment was founded on the principle that no one ought to unjustly enrich himself at the expense of another. *Heywood v. N. Assur. Co.*, 133 Minn. 360, 363, 158 N.W. 632, 633 (1916). Therefore, the gist of an unjust enrichment claim is that the defendant has received money that, in equity and good conscience, should have been paid to the plaintiff. *Brand v. Williams*, 29 Minn. 238, 239, 13 N.W. 42, 42 (1882). The focus of the claim is on what the person allegedly enriched has received, rather than on what the plaintiff has lost. *Georgopolis v. George*, 237 Minn. 176, 185, 54 N.W.2d 137, 142 (1952).

The court rejects appellants' claim of unjust enrichment "because appellants are not intended third-party beneficiaries of the contract" and therefore "[e]ssentially ... are attempting to bring an unjust enrichment claim to avoid the result that they lack third-party beneficiary status to enforce the contract." But unjust enrichment is an equitable claim that is not available if the plaintiff can recover on the basis of an express contract. *See*

*ServiceMaster of St. Cloud v. GAB Bus. Serv., Inc.,* 544 N.W.2d 302, 305 (Minn. 1996) ("A party may not have equitable relief where there is an adequate remedy at law available."). Limiting recovery for unjust enrichment to third-party contract beneficiaries, and barring recovery for unjust enrichment by those who are no more than incidental beneficiaries of a contract, simply negates the claim altogether. Moreover, if Affordable Granite & Stone failed to pay the prevailing wage for terrazzo mechanics to employees who did the work of terrazzo mechanics, it arguably violated the City's prevailing wage ordinance and therefore acted illegally.

If Affordable Granite & Stone calculated its bid for the Convention Center work on the basis of $44.31 per hour (apparently the prevailing wage for terrazzo mechanics), collected $44.31 per hour from the City for the work, paid its employees on the basis of a substantially lower wage, and simply pocketed the difference, I would conclude that Affordable Granite & Stone has been unjustly enriched in every sense of the term. Under that scenario, not only has Affordable Granite & Stone been "enriched," it has been unjustly enriched in the sense that it has knowingly violated the prevailing wage ordinance.

I would therefore reverse the court of appeals on this claim. However, here again, I would not direct entry of judgment for the appellants. Because it appears, at least on the record before us, that Affordable Granite & Stone's bid for the Convention Center work was substantially lower than that of other bidders, there are genuine issues of material fact as to the wage on which Affordable Granite & Stone's bid was calculated. I would therefore reverse the court of appeals and remand the matter for trial on appellants' unjust enrichment claim.

## III.

Finally, the court concludes that because appellants have no claim for unpaid wages, either in law or in equity, they have no claim under the Payment of Wages Act, Minn.Stat. §§ 181.01–.171 (2010). I agree with the court that the Payment of Wages Act provides no independent claim for relief. However, because I conclude there are genuine issues of material fact as to whether appellants have claims for relief, either as third-party beneficiaries of the contract between the City and Affordable Granite & Stone or for unjust enrichment, I would reverse the court of appeals on this point as well.

I therefore respectfully dissent.

ANDERSON, PAUL H., J., (dissenting).

I join in the dissent of Justice Page.