This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A15-1993

 Robert Martin, et al.,
 Appellants,

 vs.

 A’BULAE, LLC, et al.,
 Respondents.

 Filed July 11, 2016
 Affirmed
 Larkin, Judge

 Ramsey County District Court
 File No. 62-CV-15-1939

Charles E. Keenan, Christoffel & Elliott, P.A., St. Paul, Minnesota (for appellants)

David L. Hashmall, Christopher S. Hayhoe, Felhaber Larson, Minneapolis, Minnesota (for
respondents)

 Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Smith,

John, Judge.


 Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.
 UNPUBLISHED OPINION

LARKIN, Judge

 Appellants, assignees of the claims of a commercial landlord, challenge the district

court’s dismissal of their breach-of-contract, equitable-estoppel, promissory-estoppel, and

unjust-enrichment claims against respondents, a commercial tenant and its chief manager

and president, for failure to state a claim upon which relief can be granted. We affirm.

 FACTS

 Appellants Robert Marvin and David Brooks are former members of 9 & 19 LLC

(9 & 19) and assignees of its claims.1 In September 2012, 9 & 19 entered into a ten-year

commercial-lease agreement with respondent A’BULAE LLC to lease a portion of a

building that 9 & 19 owned in St. Paul (the property) to A’BULAE. Paragraph 36 of the

lease states that “Landlord shall deposit $1,500,000.00 and Tenant shall deposit

$300,000.00 in an escrow account to be used to fund . . . Tenant Improvements.” The lease

defines “Tenant Improvements” as “all alterations, improvements and additions to the

Leased Premises performed by Landlord or its agents, or Tenant, excluding movable

equipment and furniture owned by Tenant,” as set forth in an attachment to the lease. In

accordance with paragraph 36 of the lease, 9 & 19 contributed $1,500,000, and A’BULAE

contributed $300,000, for tenant-improvement costs.

1
 The case caption in the district court identifies this appellant as “Robert Martin” and that
name is used in the caption on appeal. However, the amended complaint and respondents’
brief identify this appellant as “Robert Marvin.” The caption on appeal must match the
caption used in the district court’s decision, see Minn. R. Civ. App. P. 143.01, but we use
“Robert Marvin” in the body of this opinion.

 2
 Paragraph 33(f) of the lease provides that:

 All negotiations, considerations, representations, and
 understandings between Landlord and Tenant are incorporated
 herein and may be modified or altered only by agreement in
 writing between Landlord and Tenant, and no act or omission
 of any employee or agent of Landlord or of Landlord’s broker
 shall alter, change or modify any of the provisions hereof.

  In March 2015, appellants sued respondents A’BULAE and Timothy George, its

chief manager and president, asserting breach-of-contract, equitable-estoppel, promissory-

estoppel, and unjust-enrichment claims. Appellants alleged that as the tenant

improvements progressed, respondents requested construction changes that increased the

costs of the improvements. Appellants further alleged that 9 & 19 agreed to the changes,

9 & 19 informed respondents that they would be required to pay for those changes,

respondents orally agreed to pay for the increased costs, and that respondents failed to pay

for increased costs in the amount of $576,011.54.

 Respondents moved to dismiss under Minn. R. Civ. P. 12.02(e), for failure to state

a claim upon which relief can be granted. The district court granted respondents’ motion

to dismiss, and this appeal follows.

 DECISION

 A pleading must “contain a short and plain statement of the claim showing that the

pleader is entitled to relief and a demand for judgment for the relief sought.” Minn. R. Civ.

P. 8.01. A pleading may be dismissed under Minn. R. Civ. P. 12.02(e) if it “fail[s] to state

a claim upon which relief can be granted.” A pleading should be dismissed under rule

12.02(e) “only if it appears to a certainty that no facts, which could be introduced consistent

 3
with the pleading, exist which would support granting the relief demanded.” Bahr v.

Capella Univ., 788 N.W.2d 76, 80 (Minn. 2010) (quotation omitted); see also Walsh v.

U.S. Bank, N.A., 851 N.W.2d 598, 603 (Minn. 2014) (“A claim is sufficient against a

motion to dismiss for failure to state a claim if it is possible on any evidence which might

be produced, consistent with the pleader’s theory, to grant the relief demanded.”).

 An appellate court reviews an order to dismiss under Minn. R. Civ. P. 12.02(e) de

novo. Sipe v. STS Mfg., Inc., 834 N.W.2d 683, 686 (Minn. 2013). We consider “only the

facts alleged in the complaint, accepting those facts as true.” Id. (quotation omitted).

However, we are “not bound by legal conclusions stated in a complaint.” Hebert v. City of

Fifty Lakes, 744 N.W.2d 226, 235 (Minn. 2008).

 Appellants rely on several contentions in support of reversal. We address each in

turn.2

 I.
 Appellants contend that “the district court erred as a matter of law when it dismissed

[their] equitable estoppel claim.” “Equitable estoppel is a doctrine designed to prevent a

party from taking unconscionable advantage of his own actions.” Bethesda Lutheran

Church v. Twin City Constr. Co., 356 N.W.2d 344, 349 (Minn. App. 1984), review denied

(Minn. Feb. 5, 1985). Before a court will examine the conduct of a party sought to be

2
 Because paragraph 33(f) of the lease expressly provides that the lease may only be
modified by an agreement in writing, we focus on that provision and do not discuss the
parties’ arguments regarding the possible application of the statute of frauds. See Minn.
Stat. § 513.05 (2014) (providing that a lease of more than one year’s duration must be in
writing); Alexander v. Holmberg, 410 N.W.2d 900, 901 (Minn. App. 1987) (noting that
any modification of a lease of more than one year’s duration must generally be in writing).

 4
estopped, the party seeking the application of equitable estoppel must show that the party

suffered some loss through reasonable reliance on the other party’s conduct. Ridgewood

Dev. Co. v. State, 294 N.W.2d 288, 292 (Minn. 1980). “An essential element of equitable

estoppel is reasonable reliance.” Anderson v. Minn. Ins. Guar. Ass’n, 534 N.W.2d 706,

709 (Minn. 1995). Equitable estoppel is generally not applicable to routine or typical

transactions. See, e.g., Sacred Heart Farmers Coop. Elevator v. Johnson, 305 Minn. 324,

327-28, 232 N.W.2d 921, 923 (1975) (declining to apply equitable estoppel to a typical

grain transaction between a seller and a grain elevator because doing so would “seriously

weaken the force of the statute of frauds”).

 As to reasonable reliance, appellants argue that “it seems more than obvious that it

would be natural and probable for 9 & 19 to act upon Respondents’ representation that they

would pay for the improvements outside of those agreed to in the Lease” because

respondents had already “absolutely committed to, and paid $300,000.” Appellants further

argue that “[t]he detrimental reliance by 9 & 19 was reasonable under the circumstances.”

We are not persuaded.

 9 & 19 and A’BULAE appear to be sophisticated commercial parties. They

executed a written contract for a ten-year lease, providing for over $4 million in rent

payments and $1.8 million in tenant-improvement payments. The written contract limited

A’BULAE’s responsibility for the costs of tenant improvements to $300,000. The written

contract also provided that the terms of the contract could only be modified by a written

agreement of the landlord and tenant. Under the circumstances, it was unreasonable, as a

matter of law, for 9 & 19 to spend over $500,000 on additional tenant improvements based

 5
on an alleged oral promise to pay that was unenforceable under the terms of 9 & 19’s

written contract with A’BULAE.

 Because there are no facts that could be introduced consistent with appellants’

theory to establish that 9 & 19 reasonably relied on A’BULAE’s alleged oral promise to

pay an amount greater than $300,000 for improvements, the district court did not err by

granting A’BULAE’s motion to dismiss appellants’ equitable-estoppel claim.

 II.

 Appellants contend that “the district court erred as a matter of law when it dismissed

[their] claim for oral modification of the lease.” Paragraph 33(f) of the lease specifically

provides that the lease “may be modified or altered only by agreement in writing between

Landlord and Tenant.” As support for their oral-modification theory, appellants rely on a

May 26, 2014 letter from George to Brooks, in which George allegedly “indicated . . . that

‘[t]hroughout the buildout phase, I orally agreed to $141,294.00 of additional buildout

costs’” and stated “‘I am fully performing on all commitments . . . regarding the additional

expenses to which I orally agreed.’”

 The letter does not satisfy the contractual requirement for modification “only by

agreement in writing between Landlord and Tenant.” First, the letter does not describe an

agreement between 9 & 19 and A’BULAE that A’BULAE would pay all costs of additional

improvements. Instead, it describes A’BULAE’s willingness to pay a fraction of those

costs. Second, the letter is a one-way communication from George, in his capacity as

A’BULAE’s president, to Brooks; it is not a document signed by representatives of both 9

 6
& 19 and A’BULAE acknowledging an agreement. In sum, the letter is not an “agreement

in writing” sufficient to modify the lease under its own terms. 3

 Appellants also argue that “a court may consider parol evidence of subsequent

conversations which alter the terms of a contract to determine if the parties have orally

modified a contract.” See Nord v. Herreid, 305 N.W.2d 337, 340 (Minn. 1981) (allowing

admission of parol evidence to clarify ambiguous term). But “evidence [of a subsequent

oral modification] must be clear and convincing to justify setting aside a written contract

and holding it as abandoned or substituted by a subsequent parol contract at variance with

its terms.” Duffy v. Park Terrace Supper Club, Inc., 295 Minn. 493, 498-99, 206 N.W.2d

24, 28 (1973). Because the letter is inconsistent with the alleged oral agreement to pay for

all increased tenant-improvement costs, the letter is not clear-and-convincing evidence of

the alleged agreement.

 III.

 Appellants contend that “respondents and 9 & 19 entered into a separate and distinct

oral agreement . . . outside the terms of the lease.” Appellants argue that “[t]here is no

dispute among the parties that all of the conditions, including payment, relating to the

3
 Respondents argue that George’s letter is a statement made in compromise negotiations
and therefore inadmissible under Minn. R. Evid. 408. See Minn. R. Evid. 408 (“Evidence
of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or
promising to accept, a valuable consideration in compromising or attempting to
compromise a claim which was disputed as to either validity or amount, is not admissible
to prove liability for or invalidity of the claim or its amount. Evidence of conduct or
statements made in compromise negotiations is likewise not admissible.”). Because the
letter does not satisfy the written modification requirement, we do not determine whether
rule 408 precludes consideration of the letter.

 7
tenant improvements described in Paragraph 36 of the Lease were satisfied” and that “the

parties entered into a new oral contract for additional tenant improvements and payment

thereof not contemplated by Paragraph 36 of the Lease.”

 Appellants’ argument that 9 & 19 and respondents entered into a separate oral

contract is inconsistent with the factual allegations in the amended complaint, which

describe the additional improvements as “changes to the construction plan, which

increased the costs of the Tenant Improvements far and above the $1,800,000

contemplated by [appellants].” (Emphasis added). The amended complaint describes the

alleged oral agreement as arising from respondents’ requests for those changes and notes

that respondents have “failed or refused to pay for the increased costs” of tenant

improvements. (Emphasis added). Although appellants’ amended complaint also refers to

a “separate oral contract between 9 & 19 and [respondents],” this statement is a legal

conclusion, which is not binding on this court. See Hebert, 744 N.W.2d at 235 (noting that

reviewing courts “are not bound by legal conclusions stated in a complaint”). Because

evidence that could support the claim that 9 & 19 and respondents entered into a separate

and distinct oral contract would be inconsistent with the factual allegations in the pleading,

the district court did not err by dismissing that claim. See Bahr, 788 N.W.2d at 80 (“[A]

pleading will be dismissed . . . if it appears to a certainty that no facts, which could be

introduced consistent with the pleading, exist which would support granting the relief

demanded.” (emphasis added) (quotation omitted)).

 IV.

 8
 Appellants contend that “the district court erred by not applying the doctrine of part

performance.” Because appellants did not raise this argument in district court, it is not

properly before this court, and we do not consider it. See Thiele v. Stich, 425 N.W.2d 580,

582 (Minn. 1988) (“A reviewing court must generally consider only those issues that the

record shows were presented and considered by the trial court in deciding the matter before

it.” (quotation omitted)).

 V.

 Appellants contend that “the district court erred as a matter of law when it dismissed

[their] promissory estoppel claim.” “Promissory estoppel is an equitable doctrine that

implies a contract in law where none exists in fact.” Martens v. Minn. Mining & Mfg. Co.,

616 N.W.2d 732, 746 (Minn. 2000) (quotation omitted). “[A]n express contract covering

the same subject matter will preclude the application of promissory estoppel.” Greuling v.

Wells Fargo Home Mortg., Inc., 690 N.W.2d 757, 761 (Minn. App. 2005). Because there

is an express contract covering A’BULAE’s financial responsibility for the costs of tenant

improvements, appellants are not entitled to relief under the doctrine of promissory

estoppel. See id.; see also U.S. Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d

490, 497 (Minn. 1981) (“[E]quitable relief cannot be granted where the rights of the parties

are governed by a valid contract.”).

 Moreover, no facts exist that could establish that the alleged oral promise must be

enforced to prevent injustice. “To state a claim for promissory estoppel, the plaintiff must

show that (1) there was a clear and definite promise, (2) the promisor intended to induce

reliance and such reliance occurred, and (3) the promise must be enforced to prevent

 9
injustice.” Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 834 (Minn. 2011). For

purposes of rule 12.02(e), whether facts alleged in a complaint rise to the level of

promissory estoppel presents a question of law. Martens, 616 N.W.2d at 746. Whether a

promise must be enforced to prevent an injustice is “a legal question for the court, as it

involves a policy decision.” Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn.

1992).

 9 & 19 and A’BULAE expressly agreed that the provisions of the lease may only

be modified “by [an] agreement in writing” between 9 & 19 and A’BULAE. Application

of promissory estoppel to enforce A’BULAE’s alleged oral promise to pay more than

$300,000 for tenant improvements would require a conclusion that, despite an express

provision in the lease requiring all modifications to be in writing, the alleged oral promise

must be enforced to prevent injustice.

 We do not discern an injustice justifying application of promissory estoppel. As

discussed above, appellants could not, as a matter of law, reasonably rely on A’BULAE’s

alleged oral promise to pay more than A’BULAE was required to under the written contract

between 9 & 19 and A’BULAE where that contract requires that an agreement to modify

the contract must be in writing. Because A’BULAE’s financial responsibility for the costs

of tenant improvements is limited to $300,000 under the written contract between 9 & 19

and A’BULAE and because no facts exist that could establish that the alleged oral

agreement must be enforced to prevent injustice, the district court did not err by granting

A’BULAE’s motion to dismiss appellants’ promissory-estoppel claim. See Walsh, 851

N.W.2d at 603.

 10
 VI.
  Appellants contend that “the district court erred as a matter of law when it dismissed

[their] unjust enrichment claim.” “Unjust enrichment is an equitable doctrine that allows

a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is

not legally justifiable.” Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 838

(Minn. 2012). Unjust enrichment “does not apply when there is an enforceable contract

that is applicable.” Id. “Thus, to prevail on a claim of unjust enrichment, a claimant must

establish an implied-in-law or quasi-contract in which the defendant received a benefit of

value that unjustly enriched the defendant in a manner that is illegal or unlawful.” Id.

 Appellants’ unjust-enrichment claim fails as a matter of law because the commercial

lease governs A’BULAE’s financial responsibility for the costs of tenant improvements.

See Colangelo v. Norwest Mortg., 598 N.W.2d 14, 19 (Minn. App. 1999) (“Where the

rights of the parties are governed by a valid contract, a claim for unjust enrichment must

fail . . . .”), review denied (Minn. Oct. 21, 1999).

 Moreover, “unjust enrichment claims do not lie simply because one party benefits

from the efforts or obligations of others . . . .” First Nat’l Bank of St. Paul v. Ramier, 311

N.W.2d 502, 504 (Minn. 1981). And there are no facts that could be introduced to establish

that A’BULAE was enriched in a manner that was illegal or unlawful.

 For these reasons, the district court did not err by granting A’BULAE’s motion to

dismiss appellants’ unjust-enrichment claim.

 11
 VII.

 Appellants contend that “[a]t minimum, any claim for breach of contract relating to

George for the additional tenant improvements should survive Rule 12.02(e).” Appellants

argue that “[they] allege that George directly, along with A’Bulae, agreed to pay for the

increased costs to the tenant improvements separate and apart from those described in

paragraph 36 of the Lease.” Respondents argue that because “[t]he amended complaint

makes no allegation that George did anything other than act as A’BULAE’s chief manager

and president,” all claims against him are meritless.

 The amended complaint states that “Abulae and George orally accepted financial

responsibility for the increased costs of the changes to the Tenant Improvements” and that

“Abulae and George have acknowledged that they orally agreed to pay for all increased

costs to the Tenant Improvements.” However, the amended complaint does not identify a

legal theory supporting a claim of personal liability against George. For example, the

complaint does not indicate whether George is liable for the costs of additional

improvements because he separately entered into an oral agreement to pay for such costs

or because he personally guaranteed A’BULAE’s performance of the alleged oral

agreement. The only allegation regarding George in the amended complaint is the

description of George’s letter to Brooks. But George signed the letter in his capacity as

president of A’BULAE. The letter therefore does not provide support for appellants’ claim

that George is individually liable. See Minn. Stat. § 322B.303, subd. 1 (2014) (“[A]

member, governor, manager, or other agent of a limited liability company is not, merely

 12
on account of this status, personally liable for the acts, debts, liabilities, or obligations of

the limited liability company.”).

 Because appellants’ legal theory regarding George’s personal liability is unclear

from the amended complaint and the letter described in the amended complaint does not

suggest personal liability, the district court did not err by dismissing the claims against

George. See Minn. R. Civ. P. 8.01 (requiring a “plain statement of the claim showing that

the pleader is entitled to relief”).

 Affirmed.

 13