STATE OF MINNESOTA

IN SUPREME COURT

A22-1706

Court of Appeals                                                Hudson, C.J.
                                              Dissenting, Chutich, McKeig, JJ.
                                              Took no part, Hennesy, J.

David Carl Hepfl,

            Respondent,

vs.                                                 Filed: July 24, 2024
                                                Office of Appellate Courts

Jodine Patrice Meadowcroft,

            Appellant.

_____

Perry A. Berg, Tyler L. Behrns, Patton, Hoversten & Berg, P.A., Waseca, Minnesota, for respondent.

Michelle K. Olsen, Jacob M. Birkholz, Birkholz & Associates, LLC, Mankato, Minnesota, for appellant.

_____

S Y L L A B U S

The district court did not abuse its discretion in concluding that a property owner would be unjustly enriched if allowed to retain without payment a cabin and associated fixtures and furnishings paid for by the property owner's former partner during their cohabitating, marriage-like relationship and intended for their shared use and enjoyment.

Affirmed.

1

O P I N I O N

HUDSON, Chief Justice.

This case requires us to determine whether the district court abused its discretion when it concluded that a property owner would be unjustly enriched if allowed to retain, without compensatory payment, a cabin and associated fixtures and furnishings that her former partner in a cohabitating, marriage-like relationship had paid to construct on her land for the couple's shared use and enjoyment. Jodine Meadowcroft, the appellant, and David Hepfl, the respondent, have a lengthy and complex romantic history spanning two marriages, two divorces, two orders for protection (OFPs), and at least two romantic reconciliations. This appeal concerns a property dispute arising out of the most recent dissolution of their relationship in October 2020.

After the parties' second divorce, Meadowcroft and Hepfl reconciled in 2016 but did not remarry. Following the reconciliation, they discussed and ultimately decided to build a cabin on a property on Norcross Lake in Becker County that had been Meadowcroft's nonmarital property since she was awarded it in the parties' first divorce. Hepfl paid to construct and furnish the cabin, and he also paid to construct a dock and outhouse on the site. In October 2020, the parties ended their relationship. Meadowcroft obtained an OFP against Hepfl, and Hepfl moved out of their shared primary residence in Waseca. Hepfl initiated this civil action alleging unjust enrichment in order to recover the cabin and its associated fixtures and furnishings or reasonable payment therefor. After a court trial, the district court entered judgment for Hepfl on his unjust enrichment claim,

2

and the court of appeals affirmed. Because we conclude that the district court did not abuse its discretion, we affirm.

## FACTS

The relationship between Meadowcroft and Hepfl is complicated, and it has involved two marriages, two divorces, two OFPs, and at least two reconciliations. Although the underlying dispute concerns an array of contested property issues arising from the most recent dissolution of the parties' relationship in October 2020, the sole issue raised by Meadowcroft in this appeal pertains to a cabin and its associated fixtures and furnishings constructed during the parties' most recent reconciliation.

The parties first met in the late 1990s and commenced a romantic relationship at some point between that time and the date of their first marriage in July 2003. The parties subsequently divorced in October 2009. In the division of marital property, Meadowcroft was awarded an unimproved parcel of land on Norcross Lake in Becker County (the Norcross property).

The parties married for a second time in September 2013, and subsequently divorced for a second time in October 2015. At some point in 2015, Meadowcroft obtained an OFP against Hepfl (the first OFP). In the second divorce proceeding, Meadowcroft retained the Norcross property as her nonmarital property. Following the second divorce, the Norcross property remained unimproved and Meadowcroft leased it for a period of time before she and a friend started visiting the property to camp.

At some point in 2016, the parties recommenced a romantic relationship. According to testimony at trial, the first OFP remained in effect at the time the parties rekindled their

relationship until it was dismissed at Meadowcroft's request in the summer of 2016. The parties did not remarry after reuniting in 2016.

After reuniting in 2016, the parties jointly cleaned up the Norcross property and discussed building a cabin on the property. The parties eventually agreed to build a cabin on the Norcross property, and both parties assisted in preparing the site for construction of the cabin. In January 2017, the parties signed a contract for material and labor to construct a cabin on the Norcross property for $40,119. Hepfl paid the $40,119. Hepfl also paid a total of $16,514 in additional cabin construction expenses. Hepfl borrowed $56,000 to pay for the cabin construction project and used his hunting property, which had been awarded to him in both divorces as nonmarital property, as collateral. Hepfl also spent $15,350 to furnish and decorate the cabin, as well as $8,344.40 for a dock and lift system and $1,200 for an outhouse.

The parties had no written agreement regarding Meadowcroft's reimbursement of Hepfl for the cabin expenses if their relationship failed again, and the district court concluded, as a matter of law, that they also lacked a verbal agreement to that effect. Although Hepfl asked Meadowcroft to execute a will leaving the cabin to him, she did not do so. When asked why he built a cabin on Meadowcroft's property when the two were divorced, Hepfl testified:

> We had talked and we had said come thick or thin we are going to make this happen, and I believed her that we would go the distance. That when we were at that property she said that she wanted me to enjoy this property and treat it as my own, as our property, and I did, and I did.

4

Meadowcroft testified that she believed that the cabin, furnishings, dock system, and outhouse were gifts for which she should not be required to provide reimbursement.

The third iteration of the parties' relationship ended on or about October 2020. On October 20, 2020, Meadowcroft obtained another OFP against Hepfl (the second OFP). Hepfl did not contest it, and the second OFP remained in effect at the time of the court trial at issue in this appeal.

After the end of the parties' third relationship, Hepfl filed a civil complaint alleging breach of contract and unjust enrichment and seeking return of real and personal property in Meadowcroft's possession or, alternatively, the value of said property.

Following a court trial, the district court entered judgment in Hepfl's favor on the unjust enrichment claim.[1] It concluded that Meadowcroft would be unjustly enriched if she was allowed to retain the Norcross cabin, furnishings, dock system, and outhouse without paying Hepfl for them. In so doing, the court credited Hepfl's testimony that he had no intention to gift the Norcross cabin or its fixtures and furnishings to Meadowcroft. The district court found this testimony supported by Hepfl's attempt to retain a future ownership in the cabin prior to the construction of the cabin by requesting that Meadowcroft execute a will.

Meadowcroft moved for amended findings. In part, Meadowcroft sought amended findings that "[n]o evidence was presented that [Meadowcroft] performed an unlawful,

---

[1] The district court judge who entered judgment in Hepfl's favor was the same judge who signed the second OFP. Thus, the district court was well aware of the parties' history of alleged domestic abuse.

5

illegal, or immoral action to induce [Hepfl] into paying for the construction of the [Norcross] cabin" and that Hepfl "also freely furnished the cabin of his own freewill."

The district court entered an amended order containing additional findings of fact and conclusions of law but reaching the same result. The district court ordered Meadowcroft to pay Hepfl $56,633 for the cost of constructing the Norcross cabin. Meadowcroft was also ordered to return Hepfl's personal property, the dock system, and the outhouse or to pay Hepfl their respective values of $9,750, $8,344.40, and $1,200.

On appeal, Meadowcroft reasserted her arguments that the evidence did not support a conclusion that her actions were illegal or morally wrong, as well as other arguments that are not relevant here. The court of appeals affirmed, explaining that a person receives a benefit unjustly "when she acts illegally or in a way that is morally wrong," and that "[m]orally wrong conduct can include conduct that induces an unconscionable result." *Hepfl v. Meadowcroft*, No. A22-1706, 2023 WL 5341094, at *2 (Minn. App. Aug. 21, 2023) (citing *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001) and *Park-Lake Car Wash, Inc. v. Springer*, 394 N.W.2d 505, 514 (Minn. App. 1986)). The court of appeals concluded that "[t]he record adequately evidences Meadowcroft's inducing Hepfl to expend funds to improve the property" and "supports the district court's discretionary decision to deny Meadowcroft an inequitable windfall" because (1) "Hepfl testified that he improved the Norcross property after Meadowcroft told him that he could use the property as his own," (2) "the district court implicitly credited Hepfl's testimony," and (3) Meadowcroft did not dispute that she made that representation to Hepfl. *Id.*

We granted review.

6

**ANALYSIS**

When reviewing legal questions pertaining to unjust enrichment, we apply a de novo standard of review. *Herlache v. Rucks*, 990 N.W.2d 443, 449 (Minn. 2023). However, we review a district court's ultimate equitable determinations made after a court trial for abuse of discretion. *Id.* at 449–50, 450 n.4.

A.

To begin, it is helpful to recall the traditional notion of unjust enrichment. Namely, "[e]nrichment is unjust, in legal contemplation, to the extent it is without adequate legal basis; and the law supplies a remedy for unjustified enrichment because such enrichment cannot conscientiously be retained." Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (Am. L. Inst. 2011). Our framing of unjust enrichment reflects this view. *See Herlache*, 990 N.W.2d at 450 (when bringing an unjust enrichment claim, a "plaintiff must show that the defendant was enriched illegally or unlawfully or in a manner that is morally wrong" (citation omitted) (internal quotation marks omitted)); *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (unjust enrichment "allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable"); *see also Herlache*, 990 N.W.2d at 450 (recognizing that unjust enrichment developed from a common law cause of action called "money had and received," which "could 'be maintained whenever one [person] has received or obtained the possession of the money of another, which [they] ought in equity and good conscience to pay over.' " (alteration in original) (quoting *Brand & Co. v. Williams*, 13 N.W. 42, 42 (Minn. 1882))).

7

Our case law establishes that mere enrichment alone does not suffice. *See First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) (unjust enrichment claims "do not lie simply because one party benefits from the efforts or obligations of others"). But what makes enrichment "unjust" has proven more challenging to define because it is necessarily case-specific and properly committed to the discretion of the district court. Nevertheless, our previous expositions on the requirement that enrichment be "unjust" reflect two general meanings. On the one hand, we have explained that "it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* However, we have also held that enrichment is unjust "in other situations where it would be *morally wrong* for one party to enrich himself at the expense of another." *Cady v. Bush*, 166 N.W.2d 358, 361–62 (Minn. 1969) (emphasis added); *see Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W.2d 493, 495 (Minn. 1971).

The court of appeals expounded further upon unjust enrichment under a theory of moral wrongfulness in *Park-Lake Car Wash, Inc. v. Springer*, 394 N.W.2d 505 (Minn. App. 1986). That case presented the question of whether damages owed by a defendant for wrongful possession of property should be offset by the value of improvements to the property made by the defendant's successor in interest to prevent unjust enrichment. *Park-Lake*, 394 N.W.2d at 512. The court of appeals relied on moral wrongfulness to conclude that unjust enrichment would result if the defendant was not entitled to the offset. *Id.* at 514–15. In doing so, it provided the following gloss on the meaning of moral wrongfulness in the context of unjust enrichment:

8

> [U]njust enrichment may be found where a plaintiff's conduct "has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Earle R. Hanson & Associates v. Farmers Cooperative Creamery Co.*, 403 F.2d 65, 70 (8th Cir. 1968) (quoting *Johnson v. Freberg*, 178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929)).

*Id.* at 514.[2]

In the decades since *Park-Lake* was decided, courts in this state have repeatedly cited the foregoing passage. *See, e.g.*, *Schumacher v. Schumacher*, 627 N.W.2d 725, 730 (Minn. App. 2001); *Dryer v. Nat'l Football League*, Civ. No. 09-2182, 2010 WL 11469574, at *8 (D. Minn. Oct. 25, 2010). However, to the extent that this passage from *Park-Lake* has been interpreted as requiring courts to look for morally wrongful conduct or inducement in order to succeed on an unjust enrichment claim, that is incorrect. The district court's amended order and the court of appeals' decision in this case followed this mistaken reasoning.

In suggesting the existence of a requirement of morally wrongful conduct or inducement, *Park-Lake* drew from inapposite language in our *Freberg* opinion discussing the doctrine of unclean hands, which operates to preclude a plaintiff's ability to recover in equity. *See Freberg*, 228 N.W. at 160 ("The plaintiff *may be denied relief* where his conduct has been unconscionable by reason of a bad motive, or where the result induced

---

[2]    Given the inverted procedural posture of the unjust enrichment claim in *Park-Lake*, in which a *defendant* claimed that a *plaintiff* would be unjustly enriched in the absence of an offset to damages, that case refers to "a plaintiff's conduct." In this case, Meadowcroft was the party against whom the unjust enrichment claim was brought, so the district court's amended order and court of appeals' decision both applied this passage from *Park-Lake* in light of the defendant's conduct.

by his conduct will be unconscionable either in the benefit to himself or the injury to others." (emphasis added)). Although the equitable considerations that would *prevent* a plaintiff from recovering on account of unclean hands may in some cases resemble the equitable considerations that would *allow* a plaintiff to recover for unjust enrichment, these two doctrines focus a district court's balancing of the equities on entirely distinct matters. Unclean hands necessarily balances the equities in light of a party's conduct, but unjust enrichment properly focuses on the equities of a party's *retention* of a benefit conferred. *See Herlache*, 990 N.W.2d at 450 (" 'Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when *retention of the benefit* is not legally justifiable.' " (emphasis added) (quoting *Caldas*, 820 N.W.2d at 838)).

On an unjust enrichment claim, party conduct may well play into a district court's balancing of the equities, but that is not necessarily so. In other words, while the conduct of the allegedly unjustly enriched party may bear on the balancing of equities, such a showing is not required in every case. Indeed, a plaintiff may succeed in showing that the enrichment was unjust in the absence of any improper conduct at all by the unjustly enriched party. *See In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn. 1983). And it is particularly inappropriate to constrain a district court's equitable discretion with a requirement of fraud, inducement, bad motive, or other conduct when considering unjust enrichment claims between former partners in a cohabitating, marriage-like relationship. *See id.*; Restatement (Third) of Restitution and Unjust Enrichment § 28 cmt. c (stating that such claims involve "benefits conferred in transactions that are essentially voluntary, unaffected by fraud or mistake," and the conferrer's "motives in conferring these benefits

10

are presumably complex, but they might often be characterized, even in retrospect, as essentially gratuitous—had the parties' subsequent relationship only turned out differently").

B.

Applying that legal standard here, Hepfl did not need to show that Meadowcroft engaged in any morally wrongful conduct. Rather, Hepfl only needed to persuade the district court that Meadowcroft's *retention* of the cabin and its associated fixtures and furnishings would enrich her in a way that was not equitable under the facts of the case.[3] After a full court trial, Hepfl did just that by establishing that Meadowcroft's retention of the cabin would be unjust.[4] Among the facts established at trial that support the district court's arrival at that conclusion were the following: (1) Hepfl paid for the cost of the cabin and its associated fixtures and furnishings, (2) Hepfl intended to use and enjoy these items with Meadowcroft during their relationship, and (3) there was no evidence that Hepfl

---

[3]    This is precisely the standard that the district court applied when it initially resolved the unjust enrichment claim in Hepfl's favor. The district court only applied the court of appeals' erroneous *Park-Lake* standard in its amended findings—issued upon Meadowcroft's motion—where it nevertheless reached the same result. We are satisfied that the district court's initial ruling under the proper legal standard sufficiently explains its equitable resolution of the unjust enrichment claim and that, at this juncture, a remand to the district court would serve no purpose.

[4]    There is no support for the dissent's conclusion that the district court improperly placed the burden of proving the unjust enrichment claim on Meadowcroft. Although the district court correctly assigned the burden of proof to Meadowcroft on her affirmative defense that the cabin and its associated fixtures and furnishings had been a gift to her from Hepfl, it did not require her to carry the burden on the claim as a whole. The district court concluded that, in light of all of its findings of fact, Meadowcroft was not entitled to keep what she had received from Hepfl. Meadowcroft's defensive assertion that what she had received from Hepfl had been a gift did not alter that conclusion.

11

intended to allow Meadowcroft to retain these items should the relationship end. These three facts more than suffice to conclude that the district court did not abuse its "broad discretion" in resolving unjust enrichment claims when it entered judgment in Hepfl's favor.[5] *Herlache*, 990 N.W.2d at 451 (internal quotation marks omitted) (quoting *City of Cloquet v. Cloquet Sand & Gravel, Inc.*, 251 N.W.2d 642, 644 (Minn. 1977)).

C.

The dissent contends that Hepfl should be unable to recover for unjust enrichment inasmuch as he assumed the risk that the parties' relationship would fail when he paid for the costs related to the cabin without protecting himself by contract. This argument rests on a mistaken understanding of section 28 of the Third Restatement of the Law of Restitution and Unjust Enrichment—which discusses the availability of an unjust enrichment claim to a plaintiff upon dissolution of a marriage-like relationship—and its relationship to the general rule for unjust enrichment addressed in section 27. Section 28 sets forth the rule specifically applicable to "unmarried cohabitants":

> If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

---

[5]    While the dissent chides the court for pointing out specific facts found by the district court that support the district court's own exercise of equitable discretion in resolving the unjust enrichment claim, it then proceeds to reweigh facts and second guess the district court's exercise of discretion as clearly erroneous. The dissent's suggestion of clear error ignores the district court's superior ability to balance the equities of an unjust enrichment claim after personally observing all of the testimony and is at odds with the applicable standard of review.

12

Restatement (Third) of Restitution and Unjust Enrichment § 28(1).

The commentary to section 28 goes on to explain why such a claim for restitution exists to prevent unjust enrichment under these circumstances, notwithstanding the theoretical inconsistency of a section 28 claim with the general principles in unjust enrichment that preclude recovery where a benefit was conferred as a gift or where a party assumed the risk of conferring a benefit without the protection of marriage or contract:

> Claimants within § 28 assert a right to restitution for benefits conferred in transactions that are essentially voluntary, unaffected by fraud or mistake, between parties who have—in most cases—consciously forgone both contract and the legal regime (marriage) that would substitute for contract in specifying their economic obligations. . . . The claimants' motives in conferring these benefits are presumably complex, but they might often be characterized, even in retrospect, as essentially gratuitous—had the parties' subsequent relationship only turned out differently. In theory, at least, the factors so far mentioned should weigh against the availability of restitution. The fact that some transactions between cohabitants appear nevertheless to result in manifest unjust enrichment—and that such unjust enrichment becomes visible only after the termination of the parties' relationship—shows that the propriety of the claim is explained by other features of the parties' relationship.

> . . . [A] more general explanation of unjust enrichment in this setting refers simply to the claimant's frustrated expectations. Recovery is allowed for benefits that the claimant would not have conferred, except in the expectation that the parties' subsequent relationship would be something other than it proved to be in the event. This is why the unjust enrichment in these cases can be demonstrated only in retrospect.

> Even when a transfer between cohabitants is essentially gratuitous, it may be made in the expectation that the donor will share, directly or indirectly, in the resulting benefits. Decisions allowing restitution under § 28 involve an implicit determination that the contributions at issue were made on that basis—thereby distinguishing them from ordinary gifts—and that the claimant's expectation was justifiable. They rest, moreover, on an implicit determination that the claimant should not be held to have assumed the risk

13

that things would turn out as they did (compare § 27, Comment *g*); in short, that the transaction is not one that the parties should have regulated by contract (§ 2(3)).

*Id.* at cmt. c.

The commentary makes clear in what respects section 28 represents an exception to the general rule under section 27, which applies to claims between individuals *without* a marriage-like relationship.[6] Section 27 applies a "stricter test" than section 28 and "requires that the claimant have acted in the reasonable expectation of future ownership." *Id.* at cmt. b. The commentary to section 27 explains that "where the risk of intervening contingencies is . . . reasonably apparent—with the result that the asserted liability in restitution might properly have been the subject of a contract between the parties—restitution will be denied" because "the claimant assumed the risk that the expenditures in question would benefit someone else." Restatement (Third) of Restitution and Unjust Enrichment § 27 cmt. g.

The dissent reads section 28 to say that when two people live together in a relationship resembling marriage, courts should still consider whether it was reasonable for the parties to expect that the relationship was likely to continue. Under this view, if a court determined that an unjust enrichment claimant's durational expectations of the relationship

---

[6]     In full, section 27 provides that: "If the claimant makes expenditures to maintain, improve, or add value to property that the claimant reasonably expects to retain or to acquire, and (because such expectation is frustrated) another person becomes the unintended beneficiary of the claimant's expenditure, the claimant is entitled to restitution from the other as necessary to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 27.

14

were unreasonable at the time a benefit was conferred upon their romantic partner, then there could be no unjust enrichment claim because the claimant's interest in the disputed property ought to have been protected by a contract between the parties and the claimant assumed the risk of proceeding without one.

That premise is mistaken. The point of section 28 is to prevent courts from delving into the fraught, unanswerable question of whether persons in a marriage-like relationship were reasonable in expecting that their relationship would last—a question that no court would entertain had the parties ultimately chosen to marry. The language of section 28 itself makes plain that persons in a marriage-like relationship *can* recover in unjust enrichment even without having entered into a marriage. And the commentary further clarifies that successful section 28 claims rest "on an implicit determination that the claimant should not be held to have assumed the risk that things would turn out as they did." *Id.* at cmt. c.

While the dissent quotes extensively from the commentary to section 28, the thrust of its theory is in fact that the rule of section 28 should not apply and Hepfl should instead be held to the general assumption-of-the-risk rule that would bar his recovery for unjust enrichment. In this, the dissent's conclusion is entirely consistent with section 27's stricter test applicable to claims between individuals who had *not* cohabitated in a marriage-like relationship. Because the commentary to section 28 expressly distinguishes that exact provision, we do not find the dissent's assumption-of-the-risk theory consistent with section 28, nor do we find it appropriate to apply to the facts of this case.

15

D.

Lastly, we decline the invitation of both parties to announce any new test or factors for a district court to apply when considering an unjust enrichment claim. We discern no reason to depart from our "specific[] caution[] against restricting the broad scope of the unjust enrichment remedy, given that the whole point of the action was 'to relieve against the too narrow procedure of the law.' " *Herlache*, 990 N.W.2d at 451 (quoting *Seastrand v. D.A. Foley & Co.*, 175 N.W. 117, 119 (Minn. 1919)). And we do not believe either party's proposed refinements would assist district courts to resolve unjust enrichment claims based on "the true equity and conscience of the case." *Heywood v. N. Assurance Co.*, 158 N.W. 632, 633 (Minn. 1916) (citation omitted) (internal quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

HENNESY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

16

DISSENT

CHUTICH, Justice (dissenting).

Today the court finds that the district court did not abuse its discretion when concluding that a property owner was unjustly enriched when her twice-former husband and now ex-boyfriend voluntarily paid to build and furnish a cabin on her property and the off-and-on relationship again ended. Because the district court abused its discretion by improperly applying the law of unjust enrichment, and because when the correct legal principles are applied to the undisputed facts here, I have a firm and definite belief that the ordered payment for the cabin's construction is unjust, and I respectfully dissent.

The details of the romantic involvement between appellant Jodine Meadowcroft and respondent David Hepfl are somewhat complex, but the details surrounding the construction and furnishing of the cabin at issue here are straightforward. In 2016, the parties—after having been previously married and divorced twice—were again in a romantic relationship.[1] At that time, Meadowcroft was the sole owner of a vacant lakefront parcel where the parties occasionally camped, either in a camper or in a tent. Hepfl testified that at some point he told Meadowcroft in reference to those sleeping arrangements, "I'm old . . . I can't do this," and they began discussing building a cabin on the property. They jointly agreed to build an A-frame cabin on Meadowcroft's property, the construction and furnishings of which were paid for solely by Hepfl. The cabin was financed through a loan

---

[1]    When they began their relationship a third time, Meadowcroft had an active order for protection against Hepfl.

secured by a nearby 40-acre hunting property owned by Hepfl.[2]  A dock, boat lift, and outhouse were also installed on agreement of the parties—again, solely paid for by Hepfl.

It is undisputed that the parties had no written contract regarding Meadowcroft reimbursing Hepfl for the cost of the cabin, the furnishings, the outhouse, or the dock and lift.[3]  Hepfl's claim of unjust enrichment rests, in part, on his testimony that Meadowcroft told him that "she wanted [him] to enjoy this property and treat it as [his] own," which he took to mean co-ownership, though he acknowledged knowing that the property was not jointly-owned and that Meadowcroft had never said he had an ownership interest.  Hepfl also testified that he believed "come thick or thin . . . that [they] would go the distance."

But during this time, Hepfl had asked Meadowcroft to execute a will that left the property to him, which she declined to do.  When asked in cross-examination whether they had "any agreement about how the cabin was going to work if [they] broke up," Hepfl answered, "No."  Notably, Meadowcroft had also requested that Hepfl not visit the cabin by himself—a request with which Hepfl complied, except to deliver furniture and

---

[2]     Meadowcroft joined Hepfl at his hunting property several times throughout their relationship history.  Hepfl testified that the reason they did not build the cabin on the hunting property was because they wanted a cabin on a lake—something Meadowcroft's property included, but the hunting property did not.

[3]     The district court found that "[t]he parties dispute [whether] they had a verbal agreement that [Meadowcroft] would reimburse [Hepfl] for the [property] should the parties separate," but that finding is not borne out by the testimony.  An inference could be made that Hepfl did not intend to gift the cabin, furnishings, outhouse, and dock/lift to Meadowcroft from his claim that she was unjustly enriched by retaining possession of those items, but a finding that there may have been a "verbal agreement" about those items is not supported by the record.  Hepfl's own testimony included concessions that he and Meadowcroft had no discussions regarding property distribution in the event of another break-up.

appliances that he continued to voluntarily pay for.  Ultimately, Hepfl paid for the cabin to be built on land *that he did not own* and for all of the attendant personal property with *full knowledge* of his tumultuous romantic history with Meadowcroft.

The proper measurement for an award of unjust enrichment is a legal question and therefore reviewed de novo, though this court will review a district court's grant of equitable relief for abuse of discretion.  *Herlache v. Rucks*, 990 N.W.2d 443, 449–50 (Minn. 2023).  "An abuse of discretion occurs if a district court . . . based its ruling on an erroneous view of the law, or made clearly erroneous factual findings."  *Gilbert v. State*, 2 N.W.3d 483, 487 (Minn. 2024) (citation omitted) (internal quotation marks omitted).  Factual findings are clearly erroneous "if we are left with the definite and firm conviction that a mistake has been made."  *Herlache*, 990 N.W.2d at 453 (citation omitted) (internal quotation marks omitted).  Because the district court's award to Hepfl of $56,633 for the costs associated with constructing the cabin represented a misapplication of the law of unjust enrichment, I would reverse the court of appeals' decision affirming the requirement of reimbursement for the construction of the cabin.[4]

"Enrichment is unjust, in legal contemplation, to the extent it is without adequate legal basis . . . ."  Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (Am. L. Inst. 2011).  Unjust enrichment occurs if a plaintiff can show that a defendant "was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."

---

[4]     I do not disagree with the district court's order concerning the movable property, in large part because rather than ordering that Meadowcroft *must* pay Hepfl out of her own pocket for the personal property he purchased and placed on her land, Hepfl had the option to remove and retain the items if Meadowcroft did not pay for them within 60 days.

*First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Further, unjust enrichment occurs when the "*retention* of the benefit is not legally justifiable," and does not require analysis of the defendant's motives. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (emphasis added). With no suggestion of illegality in this case, it appears as though the question then is whether Meadowcroft's retention of the cabin was inequitable.

The court today reasons that "Hepfl only needed to persuade the district court that Meadowcroft's retention of the cabin . . . would enrich her in a way that was not equitable under the facts of the case," which is true. But the court then concludes that "Hepfl did just that" and affirms that the district court reached the correct result. This conclusion is incorrect for two reasons: (1) the district court abused its discretion when it made its decision based on an erroneous view of the law by focusing on the defendant's conduct for signs of fraud or bad motive; and (2) the facts of this case are not as black-and-white as the court suggests when the correct principles underlying unjust enrichment are applied.

A.

First, the district court misinterpreted the law when deciding this case by focusing on Meadowcroft's conduct and whether it was unconscionable because of bad motive. The court agrees that this interpretation was incorrect, but nevertheless concludes that Meadowcroft was unjustly enriched. In its amended conclusions of law, the district court cited numerous cases for the incorrect proposition that a court must look to the defendant's conduct for signs of fraud or bad motive when deciding an unjust enrichment claim. And likely because Meadowcroft testified that she believed the cabin was a gift, the district

court *also* cited numerous cases on the law of gifts when stating, that "Defendant has the burden of proof [to show that the plaintiff intended something as a gift], which can only be established by clear and convincing evidence," (citing *Oehler v. Falstrom*, 142 N.W.2d 581 (Minn. 1966)).

The district court then concluded that Meadowcroft "has not met her burden of proving" that Hepfl gifted the cabin to her. That conclusion seems reasonable but also beside the point, because in its subsequent analysis of whether Hepfl had proved unjust enrichment, the district court found that "[Meadowcroft]'s *conduct* in retaining the cabin . . . for [her] sole benefit without paying [Hepfl] for the property is unconscionable by reason of a bad motive by [Meadowcroft] and morally wrong for [her] to enrich herself at the expense of [Hepfl]." (Emphasis added.) As correctly described by the court today, however, the appropriate question to answer here was only whether "retention of the cabin and its associated fixtures and furnishings would enrich [Meadowcroft] in a way that was not equitable under the facts of the case." But as shown by its amended order, the district court instead answered the questions of whether the cabin was a gift and whether Meadowcroft's conduct was unconscionable because of bad motive, clearly abusing its discretion by misapplying the law.

The court suggests that the district court actually applied the correct standard in its *initial* order, so even if it applied an erroneous standard in its amended order, "a remand to the district court would serve no purpose." But looking closer at the initial order shows that the district court applied the incorrect standard from the outset. In its initial order, the district court stated: "For Plaintiff to succeed on his unjust enrichment claims, Plaintiff

must establish that he conveyed a benefit to Defendant, that Defendant knowingly accepted the benefit, and that it would be unjust to allow Defendant to retain the benefit without paying Plaintiff." For this test, the district court paraphrased *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001),[5] but omitted crucial language from that court of appeals' opinion that specifies that "the claimant must show that another party knowingly received something of value *to which he was not entitled . . . .*" (Emphasis added.)

Whether Meadowcroft (or anyone) should be entitled to retain a permanent structure built on land which she alone owned was not addressed by the district court in its initial order. The district court's *only* rationale in that order for why Meadowcroft would be unjustly enriched was simply because the cabin was not a gift. But contrary to what is suggested in the spare analysis undertaken by the district court, it is the *plaintiff's* burden to prove unjust enrichment—not the defendant's to refute it with an affirmative defense. *Herlache*, 990 N.W.2d at 450. The district court's initial order inappropriately shifted Hepfl's burden of showing unjust enrichment to Meadowcroft by requiring her to prove that the cabin was not a gift. The district court therefore abused its discretion by misapplying the law of unjust enrichment in both its initial and its amended order.

---

[5] Note that *Schumacher*, 627 N.W.2d at 729–30, *also* used the erroneous *Park-Lake* conduct/motive standard when describing the test for unjust enrichment, as cited in the district court's amended order. To suggest that the district court initially used the proper standard—by citing *Schumacher*—veers dangerously close to an endorsement of a standard that the court just rejected.

B.

This abuse of discretion alone should be sufficient for reversal and remand because the district court applied an incorrect interpretation of the law to the facts of this case—something that the court appears to acknowledge in its refutation of the *Park-Lake* standard used by the district court. Despite this acknowledgment, however, the court has accepted facts deemed relevant by the district court *under an incorrect interpretation of the law* to determine that Hepfl had proved unjust enrichment. The court does this by pointing to three facts: "(1) Hepfl paid for the cost of the cabin and its associated fixtures and furnishings, (2) Hepfl intended to use and enjoy these items with Meadowcroft during their relationship, and (3) there was no evidence that Hepfl intended to allow Meadowcroft to retain these items should the relationship end."

But these were the facts deemed important *by a district court using an incorrect legal standard*. To conclude that the district court did not abuse its discretion, the court must assume that no other facts from the trial were relevant or could have been relevant had the district court instead used the *correct* test for unjust enrichment.

To be sure, our case law contains little discussion of what is an inequitable retention of a benefit in similar scenarios involving romantic partners. But persuasive authority found in the Third Restatement of Restitution and Unjust Enrichment (the Restatement)—cited today by the majority—is instructive. *Alonzo v. Menholt*, __ N.W.3d __, 2024 WL 3351561, at *5 (Minn. Jul. 10, 2024) ("We have 'frequently relied on the Restatement . . . to guide our development of [the] law in areas that we have not

D-7

previously had an opportunity to address.' " (quoting *Larson v. Wasemiller*, 738 N.W.2d 300, 306 (Minn. 2007))).

One section from the Restatement concerns couples in marriage-like relationships and states:

> If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner *as necessary* to prevent unjust enrichment upon the dissolution of the relationship.

Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (emphasis added). What makes a claim of unjust enrichment "necessary" is illustrated by the comments. All "circumstances of the parties' relationship, may be relevant in assessing claims based on . . . unjust enrichment . . . ." *Id.* at cmt. a.

The Restatement explains that when a benefit conveyed by a claimant is "essentially gratuitous, it may be made in the expectation that the [claimant] will share, directly or indirectly, in the resulting benefits." *Id.* at cmt. c. Even so, the comments stress that finding unjust enrichment requires a determination "that the claimant's expectation [of sharing in those benefits] was *justifiable*." *Id.* (emphasis added). Also crucial is "an implicit determination that the claimant should not be held to have assumed the risk that things would turn out as they did . . . in short, that the transaction is not one that the parties should have regulated by contract." *Id.* In other words, after assessing the circumstances of the parties' particular relationship, "a claim in restitution will fail whenever the claimant

is judged to have assumed the risk that a benefit conferred on the defendant would be neither compensated nor returned."[6] *Id.*

Had the district court applied the law of unjust enrichment correctly and also considered these principles pertinent to a romantic relationship, it may well have come to a different conclusion. In the absence of a remand, however, after applying these Restatement principles to the record here, I am left with a definite and firm conviction that a mistake has been made in ordering Meadowcroft to pay for the unjustifiable risk that Hepfl willingly and knowingly took.

Here, the record contains many facts showing that Hepfl's expectations to enjoy the cabin in perpetuity were not justifiable. To begin, the nature of the parties' fraught and dysfunctional relationship cannot be ignored. Hepfl was married to and divorced from Meadowcroft *twice* before deciding to fund the cabin, and she had sought and been granted an order for protection against him after their most recent divorce. Meadowcroft alone owned the property upon which the cabin was built, which Hepfl well knew because it was awarded to her in their first divorce and again as nonmarital property in their second

---

[6] The court notes that the Restatement's commentary to section 28 "expressly distinguishes" a provision from section 27 to dismiss my consideration of section 28's assumption of the risk commentary. It is true that the comments to section 28 distinguish the test from the one presented in the comments to section 27, but that does not make section 28's discussion of assumption of the risk irrelevant. The language in the comments to section 28 could not be clearer: Decisions allowing restitution under section 28 rest "on an implicit determination that the claimant should not be held to have assumed the risk that things would turn out as they did . . . in short, that the transaction is not one that the parties should have regulated by contract." Restatement (Third) of Restitution and Unjust Enrichment § 28 cmt. c. Here, Hepfl assumed a significant risk when funding the cabin and should have safeguarded his investment by contract.

divorce. Hepfl's optimistic belief that a third go-round would be the charm (this time without the legal protections of marriage concerning property) should be viewed with a gimlet eye.[7]

Moreover, his blithe belief that he could treat the cabin as his own—in his words, "as our property"—is belied by two undisputed facts: (1) Hepfl asked that Meadowcroft execute a will devising him the cabin and she declined; and (2) while the cabin was being completed and furnished, Meadowcroft requested that Hepfl not visit the cabin without her. This evidence shows that, despite these warning signs and the past difficulties of the parties' relationship, Hepfl chose of his own free will to construct a building on land not belonging to him, all while securing no agreement—legal or otherwise—for how the cabin would work should the rocky relationship end once again. The equitable remedy of unjust enrichment should not reward such unreasonable and risky behavior.

In sum, because the purported unjust enrichment here became "visible only after the termination of the parties' relationship," the comments to the Restatement instruct us to look to the "other features of the parties' relationship" when judging the propriety of these claims. Restatement (Third) of Restitution and Unjust Enrichment § 28 cmt. c. Here, those "other features"—including two marriages, two divorces, an order for protection issued against Hepfl, and clear signs that Meadowcroft did not intend to share the property if another breakup occurred—show that a monetary award was not justifiable or necessary to

---

[7]   I do not write today claiming that there could exist no similar scenario where a person *would* be unjustly enriched in Meadowcroft's position, were the hypothetical parties' romantic history not so obviously prone to dysfunction.

prevent an *inequitable* retention of a benefit under the unique circumstances of this case.

For these reasons, I respectfully dissent.


McKEIG, Justice (dissenting).

I join in the dissent of Justice Chutich.